BECKER, GLYNN, MUFFLY,
CHASSIN & HOSINSKI, LLP
299 Park Avenue
New York, New York 10171
(212) 888-3033
Alec P. Ostrow
aostrow@beckerglynn.com

*Proposed Attorneys for Plaintiff, Jeffrey Solomon*
*Simpson, as Debtor and Debtor in Possession, Plaintiff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JEFFREY SOLOMON SIMPSON,<br><br>                        Debtor. | Chapter 11<br><br>Case No. 26-10359 (LGB) |
| JEFFREY SOLOMON SIMPSON, as Debtor and Debtor in Possession,<br><br>                     Plaintiff,<br><br>     -   against   -<br><br>ERIC HUEBSCHER, as Receiver of Certain Assets of JJ Arch,<br><br>                   Defendant. | Adv. Pro. No.  26-01013 (LGB)<br><br>**PLAINTIFF'S MOTION FOR**<br>**INJUNCTIVE RELIEF**<br>**ENFORCING**<br>**AND EXPANDING THE**<br>**<u>AUTOMATIC STAY</u>** |

Plaintiff Jeffrey Solomon Simpson (the "Debtor"), as Debtor and Debtor in Possession, by his undersigned counsel, seeks an order pursuant to sections 105(a) and 362(a) of title 11 of the United States Code (the "Bankruptcy Code"), enforcing and extending the automatic stay to prohibit the defendant Eric Huescher, as Receiver of Certain asset of JJ Arch (the "Receiver") from conducting an auction selling assets claimed to belong to the Debtor's estate until such claims can be resolved, and from shutting down a business that will risk the expansion of the

Debtor's liabilities and impede his reorganization efforts, granting the Debtor such other and further relief as is just.

## Introduction

1.      This motion seeks an injunctive order to enforce and expand the automatic stay to prevent the defendant from selling at auction assets that the Debtor contends to be property of the estate and property that he may exempt from the estate until such claims can be resolved, and to shut down a business the effect of which will, by virtue of the loss of a grandfathered exception to the local zoning laws, result in a substantial diminution of the value of property, subject to a mortgage guaranteed by the Debtor, and risk the expansion of the Debtor's liabilities, thereby impeding the Debtor's reorganization efforts.  The Receiver's auction is being conducted by Maltz Auctions and is scheduled to begin on Monday, February 23, 2026, at 9:00 a.m.  A copy of the auction information as downloaded by the Maltz website is attached hereto as Exhibit A.

## Jurisdiction and Venue

2.      This adversary proceeding is commenced in connection with the Debtor's chapter 11 bankruptcy case pending in this district, case no. 26-10359 (LGB).   The Debtor filed his voluntary chapter 11 petition with this Court on February 19, 2026.

3.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1409.

5.      This motion presents adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

4904-5018-4336 v.1

**Parties**

6.    Plaintiff is the Debtor and the debtor in possession in this bankruptcy case.  On

the filing of the Debtor's voluntary chapter 11 petition, the Debtor became a debtor in

possession, pursuant to sections 1101(1) and 1107(a) of title 11 of the United States Code (the

"Bankruptcy Code").  No separate trustee or examiner has been appointed.

7.    Defendant Eric Huebscher, as Receiver of Certain Assets of JJ Arch (the

"Receiver"), was appointed as temporary receiver by order, dated March 11, 2025, of the

Supreme Court of the State of New York, County of New York over certain assets of JJ Arch, in

an action entitled *Simspon  v. Chassin*, Index No. 158055/2023 (the "158055 Action").

**Factual Background**

8.    The circumstances leading to the filing of the Debtor's chapter 11 case are set

forth in the Debtor's declaration pursuant Local Bankruptcy Rule 1007-2, a copy of which is

annexed hereto as Exhibit B, and statements contained therein are incorporated by reference.

**The Proposed Asset Sale**

9.    In the 158055 Action, the Receiver sought and obtained an order, dated December

23, 2025, authorizing him to sell the assets of 1640 Motors LLC d/b/a Rever Motors via public

auction (the "Auction Order").  A copy of the Auction Order is annexed hereto as Exhibit C

10.    The Auction Order further provided:

> **ORDERED**, that Simspon (accompanied by counsel) shall,
> within fourteen (14) days of entry of this Order, be provided access
> to the Business Premises to identify assets to which Simpson
> claims ownership and can demonstrate, to the Receiver's
> satisfaction and subject to the Court's review, such ownership, and
> that such assets shall not be sold by the Receiver; and it is further
>
> **ORDERED**, that the Receiver is not authorized to sell any
> Assets (or parts thereof) the ownership of which remains in
> dispute, subject to the Court resolution of such disputes; . . .

3

11. Despite the provision in the Auction Order for the Debtor to be provided access to the Business Premises to identify his assets, there was not a satisfactory opportunity for the Debtor (accompanied by counsel) to visit the Business Premises to identify his property.

12. In the 158055 Action, the Receiver sought and obtained a supplemental order, dated January 23, 2026, in connection with the sale of Rever Motor assets (the "Supplemental Order"). A copy of the Supplemental Order is annexed hereto as Exhibit D.

13. The Supplemental Order contained the following finding:

> **WHEREAS**, the Court finds that the Receiver has provided Simpson access to the Business Premises as required by the Auction Order and that Simpson's failure to visit the Premises to identify assets to which he claims ownership within the period provided in the Auction Order shall not be a basis for delaying the Receiver's sale of the Rever Motors' assets located there; . . .

14. The Supplemental Order further provided:

> **ORDERED THAT:**
>
> 1. The Application is granted as set forth herein.
>
> 2. The Receiver is authorized to proceed with the sale of the Rever Motors' assets located on the Business Premises.
>
> 3. The Auction Order remains in full force and effect.

15. Notably, neither the Auction Order nor the Supplemental Order purported to terminate or otherwise determine the Debtor's ownership interest in the property to be sold.

**<u>The Shutdown of the Business</u>**

16. As set forth in a letter, dated December 11, 2025, from Edward Burke Jr., Esq., who has represented the owners of the real property since 2023 (the "Burke Letter"), a copy of which is annexed hereto as Exhibit E, the real property on which Rever Motors has carried on

4

business is currently zoned for residential use.  Because the Rever Motors business pre-dated the current zoning law, its nonconforming use is grandfathered.

17.     The real property on which Rever Motors has carried on in business is subject to a mortgage originally granted to ConnectOne Bank in the amount of $1.5 million.  The mortgage is now held by Watermill Capital Holdings ("Watermill").  The Debtor has guaranteed the mortgage debt.  Watermill has commenced a foreclosure action on the property in the Supreme Court of the State of New York, County of Suffolk, Case No. 623575/2024, which names the Debtor as one of the guarantors.  A copy of the summons and complaint in the Watermill foreclosure action without its exhibits is annexed hereto as Exhibit F.  Although the current amount owed is not set forth, the complaint in the Watermill foreclosure action alleges in paragraph 18 that debt to Watermill has not been paid.  The Debtor estimates that the current mortgage debt likely exceeds $1.7 million.

18.     At the time of the original mortgage, an appraisal of the real property was obtained by ConnectOne Bank from Westrock Appraisal Services Corp. (the "Westrock Appraisal"), and a copy was provided to the Debtor.  The Westrock Appraisal is 134 pages long. A copy of the cover page, introductory letter and first 11 pages of the Westrock Appraisal is annexed hereto as Exhibit G.  The entirety of the Westrock Appraisal is available to the Court and parties to the extent necessary.  The appraised value of the property at the time was $2,575,000.  The size of the property, as set forth on page 4 of the Westrock Appraisal (Limiting Conditions item 14), is approximately 0.68 acres.

19.     In the event of a cessation of the grandfathered nonconforming use, the value of the property, which, as set forth in the Burke Letter, may then be used only for a single-family residence, will substantially decline to the point of being less than the amount of the mortgage

4904-5018-4336 v.1

debt, which the Debtor has guaranteed.  On February 20, 2026, at approximately 7:47 a.m., the Debtor ran a search on the Zillow website for comparable sales of recently sold homes with the following search criteria: Water Mill and vicinity, .5 acres to 5 acres, properties sold between $900,000 and $4 million.  A copy of the search result is annexed hereto as Exhibit H.  The search result shows that for residential real property in the vicinity there were 9 sales with prices ranging between $1.8 million and $3.76 million and acreage ranging between 4.7 acres and 0.63 acres, with an average price per acre of $1.389.  For the subject real property of 0.68 acres, that would mean an estimated value of approximately $944,000, which is substantially less than the amount of the mortgaged debt.  Moreover, the subject real property is located on a busy street, which tends to depress the price of the property.

20.     The Receiver is not required by the Auction Order or the Supplemental Order to shut down the business.  In conducting the auction and clearing the property of the indicia of the business, the Receiver threatens to increase the Debtor's liabilities substantially and impair his reorganization efforts.

<b>Relief Requested and the Basis for Such Relief</b>

21.     The Debtor seeks an order, pursuant to sections 105(a) and 362(a) of the Bankruptcy Code, enforcing and extending the automatic stay to prevent the Receiver from conducting the auction scheduled to begin on Monday, February 23, 2026, at 9:00 a.m.

**Selling Property in Which the Debtor Claims an Interest Violates the Automatic Stay**

22.     The filing of the Debtor's bankruptcy petition created an estate, pursuant to section 541(a)(1) of the Bankruptcy Code, which consists in part of "all legal and equitable interests of the debtor in property as of the commencement of the case" and property is in the

bankruptcy estate, pursuant to section 541(a) of the Bankruptcy Code, irrespective of "wherever [such property] is located and by whomever held."

23.     Pursuant to section 522(b)(1) of the Bankruptcy Code, an individual debtor, such as the Debtor, is permitted to exempt from the bankruptcy estate, certain property.  Such property is set forth on the Debtor's Schedule C, which has not yet been filed.  The Debtor is permitted to elect a set of exemptions under state and non-bankruptcy federal law or under section 522(d) of the Bankruptcy Code.  Either set of exemptions permits the exemption of an automobile and other property of any nature, subject to a limitation in value.

24.     The filing of the Debtor's bankruptcy petition imposed an automatic stay, pursuant to section 362(a) of the Bankruptcy Code applicable to "all entities" that among other things, prevents in subsection 362(a)(3) "any act to exercise control over property of the estate."

25.     As recognized in the Auction Order and the Supplemental Order, the Debtor claims ownership in property that is scheduled to be sold.  Despite the finding in the Supplemental Order, which the Debtor challenges, that the Receiver has provided the Debtor with access to the Business Premises and that the Debtor's failure to visit the Premises to identify assets in which he claims ownership within the period provided by Auction Order shall not be a basis for delaying the Receiver's sale, the filing of the Debtor's petition and the resulting creation of the bankruptcy estate and imposition of the automatic stay supersede the authority granted to the Receiver by the state court orders.  The Receiver may not exercise control over property of the estate.

26.     Since there has been no determination of what property the Receiver proposes to sell is property the estate, the Debtor is entitled to an injunction enforcing the automatic stay to prevent the sale until there is a determination that no property of the estate will be sold.

4904-5018-4336 v.1

**The Stay Should Be Expanded to Prevent the Debtor from Incurring Additional Liability**

39.     Section 105(a) of the Bankruptcy Code authorizes the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.  This provision has been construed to authorize injunctive relief against acts that have immediate adverse economic consequences for a debtor's estate, or when the estate is likely to suffer irreparable harm in the absence of such relief.

40.     The shutting down of the business and concomitant loss of value of the underlying real property due to the imposition of zoning restrictions results in the risk of immediate economic consequences that are irreversible.

41.     Courts have expanded the automatic stay to prevent actions, such as litigation against a non-debtor, that will have "an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003).  The stay has been expanded in circumstances where the "liability of the nondebtor will be imputed to the debtor by operation of law." *Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, No. 13 Civ. 4650 (JFK), 2014 WL 4783008, at *2 (S.D.N.Y. Sept. 25, 2014); and where the action would "embarrass, burden, delay or otherwise impede the reorganization proceedings." *Chase Manhattan Bank (Nat'l Ass'n) v. Third Eighty-Ninth Assocs. (In re Third Eighty-Ninth Assocs.)*, 138 B.R. 144, 147 (S.D.N.Y 1992) (quoting *Garrity v. Leffler (In re Neuman)*, 71 B.R. 567, 571-72 (S.D.N.Y. 1987).

42.     To the extent that the loss of value of the real property renders the mortgage debt undersecured, the Debtor's guaranty of such debt will result in increased liability, which is currently not calculable, and threatens to impede the Debtor's reorganization.

4904-5018-4336 v.1

**No Previous Request**

43.    No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtor respectfully prays for an order enjoining the Receiver from selling assets claimed to belong to the Debtor's estate until such claims can be resolved, and from shutting down a business that will risk the expansion of the Debtor's liabilities and impede his reorganization efforts, granting the Debtor such other and further relief as is just.

Dated: New York, New York
   February 20, 2026

             BECKER, GLYNN, MUFFLY,
             CHASSIN & HOSINSKI, LLP

             By:  */s/ Alec P. Ostrow*___
               Alec P. Ostrow
               aostrow@beckerglynn.com
               299 Park Avenue
               New York, New York 10171
               (212) 888-3033

             *Proposed Attorneys for Jeffrey Solomon*
             *Simpson, as Debtor and Debtor in*
             *Possession, Plaintiff*

4904-5018-4336 v.1