BECKER, GLYNN, MUFFLY,
CHASSIN & HOSINSKI, LLP
299 Park Avenue
New York, New York 10171
(212) 888-3033
Alec P. Ostrow
aostrow@beckerglynn.com

*Proposed Attorneys for Plaintiff, Jeffrey Solomon*
*Simpson, as Debtor and Debtor in Possession, Plaintiff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JEFFREY SOLOMON SIMPSON,<br><br>Debtor. | Chapter 11<br><br>Case No. 26-10359 (LGB) |
| JEFFREY SOLOMON SIMPSON, as Debtor and Debtor in Possession,<br><br>Plaintiff,<br><br>-  against  -<br><br>ERIC HUEBSCHER, as Receiver of Certain Assets of JJ Arch,<br><br>Defendant. | Adv. Pro. No. 26-01013 (LGB) |

**DEBTOR'S REPLY IN FURTHER SUPPORT OF MOTION**
**MOTION FOR INJUNCTIVE RELIEF ENFORCING AND**
**EXPANDING THE AUTOMATIC STAY**

Plaintiff Jeffrey Solomon Simpson (the "Debtor", as Debtor and Debtor in Possession, by

his undersigned counsel, replying to the Objection of Eric M. Huebscher, in his capacity as

Receiver (the "Receiver"), to Plaintiff's Motion for Injunctive Relief, ECF Doc. 12 (the

4905-3659-2281 v.1

"Receiver's Objection"), and the Objection of Proposed Intervenor Jared Chassen to Plaintiff's Motion for Injunctive Relief Enforcing and Expanding the Automatic Stay, ECF Doc. 14 (the "Chassen Objection") (collectively, "the Objections"), and in further support of his motion for injunctive relief enforcing and expanding the automatic stay (the "Motion"), respectfully set forth and represents:

### Introduction

1. When the Debtor originally filed this adversary proceeding and the Motion on February 20, 2026, the Receiver's sale was scheduled to begin on Monday, February 23, 2026, via auction conducted by Maltz Auctions. The Debtor sought a temporary restraining order to prevent the sale from taking place on that date, but the weather intervened. A major snowstorm resulted in the postponement of the start of the sale until April 6, 2026, and the need for immediate injunctive relief at that time was obviated. A copy of the updated auction information as downloaded from the Maltz Auctions website is attached hereto as Exhibit 1. It is the April 6, 2026 sale that the Debtor now seeks to enjoin as part of the Motion.

2. Another development subsequent to the filing of this adversary proceeding and the Motion is the requested intervention of Mr. Chassen. The Debtor does not oppose Mr. Chassen's intervention in principle, but opposes his request to waive the requirement of a pleading by Mr. Chassen. That is a separate motion for this Court to decide. Nevertheless, the Chassen Objection brings up the issue of how the receivership came about in the first instance. *See* Chassen Objection ¶¶ 13-55. As discussed below, this allows the Court to consider to extent to which the receivership should be allowed to continue, not just as to the specific aspects of this Motion, which concerns the sale of assets located at the premises of Rever Motors and the shutting down of such business, but as to other aspects of the receivership. The Receiver's

4905-3659-2281 v.1

Objection touches upon other aspects of the receivership as well.  *See* Declaration of Eric M. Huebscher, in his Capacity as Receiver, in Opposition to Plaintiff's Motion for Injunctive Relief, ¶¶ 55a-d, ECF Doc. 12-1.

3.      Both Objections raise many factual issues that the Debtor disputes.  Such factual disputes can only be resolved in an evidentiary hearing, and the Debtor welcomes the opportunity to testify.  The Debtor's version of the relevant background is set forth in his declaration, pursuant to Rule 1007-2, which was filed with the petition, and a copy of which was attached to the Motion as Exhibit B.

4.      This reply will principally address the legal issues raised by the Objections.  It will also provide relevant documents for the Court's consideration of these issues.  The factual disputes that are material to the Court's determination of the Motion will need to be resolved in an evidentiary hearing.  To the extent such evidentiary hearing needs to take place or conclude after the April 6, 2026 sale, the Debtor respectfully requests for a temporary injunction postponing the sale until the Court's determination of the Motion.

### The Automatic Stay Operates to Prevent the Receiver's Sale.

5.      First, the automatic stay, "one of the fundamental debtor protections provided by the bankruptcy laws," *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986) (internal quotation omitted), is an existing injunction.  The enforcement of it requires no showing of irreparable harm, likelihood of success, or any other showing.  To the extent that the Receiver purports to exercise control over property of the Debtor's estate, the automatic stay prevents that action.  11 U.S.C. § 362(a)(3).  The Debtor's estate consists of all legal and equitable interests of the Debtor in property wherever located and by whomever held.  *Id.* § 541(a)(1).  Consequently, the Debtor's estate includes property that belonged to the Debtor at the

4905-3659-2281 v.1

time of the filing of the petition, even if such property is in the possession of the Receiver on the premises of Rever Motors.

6.      Second, it is purview of this Court, not the Receiver, to determine whether the Debtor's claims that property on the premises of Rever Motors, as set forth on the Debtor's Schedule A/B, Part 2, item 3, a copy of which is attached hereto as Exhibit 2, is property of the Debtor's estate. The Receiver may question whether these items really belonged to the Debtor prior to his chapter 11 filing. But he has no right to make that determination himself. Any dispute must be resolved by this Court at an evidentiary hearing. The Receiver certainly has no right to disregard the effect of the automatic stay and press ahead with a sale without a determination from this Court that the property does not belong to the estate.

7.      To the extent the property at issue consists of vehicles for which titles determine ownership, such titles will need to be produced or an explanation of why such titles cannot be produced must be provided. Significantly, much of the property described on the Debtor's Schedule A/B, Part 2, item 3, consists of parts and tools for which there is no officially recognized indicia of ownership. The Debtor will testify how he acquired these items with his own funds and how they came to be on the property of Rever Motors. He will then be available for cross-examination. Then the objecting parties will be free to present any competent witness to contradict the Debtor's testimony, if such a witness exists. It will then be up to this Court to decide. The Receiver should not be permitted to short-circuit that process by proceeding with his sale before such an evidentiary hearing can occur.

**The *Rooker-Feldman* Doctrine Is Inapplicable.**

8.      The Objections invoke the *Rooker-Feldman* doctrine to contend that this Court may not grant relief inconsistent with what the state court has already ordered.  This argument is without merit.  The *Rooker-Feldman* doctrine does not apply.

9.      As stated by the Supreme Court, "The *Rooker-Feldman* doctrine prevents lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).  In the Second Circuit, there are four requirements for the doctrine to apply:  (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the federal court proceedings commenced.  *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009); *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005); *Blue Dog at 399 Inc. v. BP 300 Park Ave. LLC (In re Blue Dog at 399 Inc.)*, 540 B.R. 67, 79 (Bankr. S.D.N.Y. 2015).  Applying these requirements, there are several reasons why the doctrine does not apply.

10.      First, the Debtor has not lost in state court.  There is no state court judgment.  No one seriously contends that the state court action has reached its conclusion.  Moreover, there is no final state court order concerning the Receiver, especially since the Receiver was appointed as a "temporary receiver," pursuant to N.Y.C.P.L.R. § 6401.  A copy of the Order Appointing Temporary Receiver, Order, *Simpson v. Chassen*, Index No. 158055/2023, NYSCEF No. 1360 (Sup. Ct. N.Y. Cnty. Mar. 11, 2025), is attached hereto as Exhibit 3.  Notably, subdivision (b) of that statute provides in relevant part:  "Upon motion of the receiver or a party, powers granted to

5

a receiver may be extended or limited . . . ." *Id.* § 6401(b). The relevant state court orders, which are attached to the Motion as Exhibits C and D, authorize a sale. They do not direct a sale and they do not specify a date for the sale. Finally, if the state court action had not been stayed in its entirety, the Debtor could apply for relief from the state court.

11. Significantly, however, the state court action has been stayed in its entirety. Order, *Simpson v. Chassen*, Index No. 158055/2023, NYSCEF No. 2363 (Sup. Ct. N.Y. Cnty. Feb. 27, 2026), a copy of which is attached hereto as Exhibit 4. Following letters from the parties that requested and opposed reconsideration of the stay, Justice Cohen issued a court notice declining to disturb the stay, stating:

> [T]his case at this point should be included in the federal proceedings so that it can move forward . . . . Maintaining related proceedings in a single forum (to ensure coordination and avoid inconsistent rulings) has long been the Courts preference in these interconnected matters, and at this juncture the Bankruptcy Court appears to be that forum.

Court Notice, *Simpson v. Chassen*, Index No. 158055/2023, NYSCEF No. 2369 (Sup. Ct. N.Y. Cnty. Mar. 10, 2026), a copy of which is attached hereto as Exhibit 5. Indeed, the state court has expressed its preference for matters previously addressed in the state court action to be addressed in this Court. Thus, the first requirement for the applicability of the *Rooker-Feldman* doctrine is not satisfied.[1]

---

[1] It should be noted that the Debtor is the subject of an anti-removal injunction regarding the state court action imposed by the district court. The Debtor filed a motion in the district court on March 12, 2026 to construe that the injunction does not apply to the Debtor as debtor in possession, for relief from the injunction, or for permission to remove under the terms of the injunction. *See* Notice of Motion, Memorandum of Law, and Declaration of Alec P. Ostrow, *Simpson v. Chassen*, No. 25-CV- 04040 (JAV), ECF Docs. 70-72 (S.D.N.Y. Mar. 12, 2026). That motion is pending in the district court. Counsel for Mr. Chassen has informed counsel for the Debtor that he intends to oppose such motion, and has requested counsel for the Debtor to consent to an extension of time to file such opposition. Counsel for the Debtor has consented to an extension of time for such opposition until April 20, 2026.

6

4905-3659-2281 v.1

12. Second, there is a subsequent event that changes the legal landscape from what had been provisionally decided in the state court action, namely, the Debtor's filing of his personal chapter 11 case, and its attendant consequences, including the creation of property of the estate and the imposition of the automatic stay. In addition, because the Debtor is a debtor in possession, he has the all of the rights, powers, functions, and duties of a trustee, except for the right to compensation. 11 U.S.C. § 1107(a). If this Court could rule on a motion made by a separate trustee to enforce or expand the automatic stay, then, it is respectfully submitted that there is no good reason why the Court cannot rule on such a motion just because the name of the person with the rights, powers, functions, and duties of the trustee is Jeffrey Simpson. Enforcing or expanding the automatic stay is not the same thing as either complaining of injuries caused by a state-court judgment or inviting review and rejection of a state-court judgment. Thus, the second and third requirements for the applicability of the *Rooker-Feldman* doctrine are not satisfied.

13. Because three of the four requirements for the applicability of the *Rooker-Feldman* doctrine are lacking, the doctrine is inapplicable. As a result, this Court is not disempowered from granting the relief requested by the Debtor.

### The Intervention of Jared Chassen Exemplifies Why an Expansion of the Stay Is Appropriate in this Case.

14. Mr. Chassen's intervention in this adversary proceeding exemplifies why an expansion of the stay to prevent the shutting down of the business is appropriate in this case. Mr. Chassen signed an agreement, dated as of August 1, 2023, with the Debtor, and YJ Simco LLC (the "August 1 Agreement"), a copy of which is attached hereto as Exhibit 6. The August 1

7

4905-3659-2281 v.1

Agreement, in which Mr. Chassen and the Debtor are referred as the "Parties," provides in Section 1 in relevant part:

> On the date hereof (the "Closing Date"), the Parties (and their respective relatives and affiliates, including but not limited to Deborah Chassen and Arielle Chassen (the "Chassen Affiliates")) shall transfer to YJ Simco, all of the membership interests in the Simpson Companies that are beneficially owned by Chassen or the Chassen Affiliates as of the date hereof other than 1640 Montauk. The Parties shall cause JJ Arch LL [sic], a New York limited liability company to transfer 100% of its membership interest in 1640 Montauk to YJ Simco.

Significantly, the "Simpson Companies" as defined in Recital B of the August 1 Agreement are "1640 Montauk," which is defined term in Recital A for 1640 Montauk LLC, a New York limited liability company, and "1640 Opco," which is a defined term in Recital A for 1640 Motors LLC, a New York limited liability company. 1640 Motors LLC does business as Rever Motors.

15. The August 1 Agreement predates by more than one year Mr. Chassen's motion for an order appointing a temporary receiver pursuant to N.Y.C.P.L.R. § 6401 for certain assets and interests belonging to JJ Arch, including 1640 Motors LLC. Consequently, Mr. Chassen sought the appointment of a temporary receiver for a company in which he had previously transferred his interest to YJ Simco.

16. Because the Receiver's control over Rever Motors, pursuant to a state court order, was obtained under circumstances where the moving party had previously transferred his interest, there is a substantial basis to question whether the Receiver's control over such business should not be limited in accordance with N.Y.C.P.L.R. § 6401(b), especially when there has never been a final adjudication of the Debtor's rights and claims in the state court action.

4905-3659-2281 v.1

17.     As set forth in the Debtor's Motion, the shutting down of the Rever Motors business has irreparable consequences to the Debtor, because it decreases the value of the underlying real property by threatening the loss of grandfathered nonconforming use under the local zoning laws.  The Debtor has guaranteed the mortgage on such real property.  To the extent that the property sells for less than the mortgage debt, the Debtor's liabilities are increased.  To the extent that the property sells for more than the mortgage debt, the surplus value should accrue to the owner of 1640 Montauk, which is YJ Simco, 50% of which is owned by the Debtor.  This clearly demonstrates a basis for expanding the stay under *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003) and *Chase Manhattan Bank (Nat'l Ass'n) v. Third Eighty-Ninth Assocs. (In re Third Eighty-Ninth Assocs.)*, 138 B.R. 144, 147 (S.D.N.Y 1992).

18.     The Receiver's counsel argues that there is a 12-month abandonment rule before the nonconforming use can negatively impact the real property.  Assuming that is correct, the Receiver's appointment was approximately one-year ago.  Even though the Receiver contends that he "determined that the business of Rever Motors was not viable in late May 2025," he also contends that he "has never operated the business."  Receiver Objection ¶ 29.  Thus, the 12-month abandonment rule cannot protect the negative impact on the real property for much longer, if at all.  An expansion of the stay prohibiting the shut down of the business is therefore a necessary and appropriate use of this Court power under 11 U.S.C. § 105(a).

WHEREFORE, the Debtor respectfully prays for an order enjoining the Receiver from selling assets claimed to belong to the Debtor's estate until such claims can be resolved, and from shutting down a business that will risk the expansion of the Debtor's liabilities and impede his reorganization efforts, and granting the Debtor such other and further relief as is just.

4905-3659-2281 v.1

Dated: New York, New York
March 20, 2026

BECKER, GLYNN, MUFFLY, CHASSIN &
HOSINSKI LLP
299 Park Avenue, 16th Floor
New York, New York 10171
Telephone: 212-888-3033
Facsimile: 212-888-0255


By: _/s/ Alec P. Ostrow_____
Alec P. Ostrow
aostrow@beckerglynn.com

*Proposed Attorneys for Plaintiff, Jeffrey Solomon Simpson, as Debtor and Debtor in Possession, Plaintiff*

10

4905-3659-2281 v.1