FARRELL FRITZ, P.C.
Martin G. Bunin
622 Third Avenue, Suite 37200
New York, NY 10017
Telephone: (212) 687-1230

*Counsel for Defendant Eric M. Huebscher, not individually
but solely in his capacity as Receiver*

**UNITED STATES BANKRUPTCPY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| --------------------------------------------------------------------- x | | |
| In re: | : | Chapter 11 |
| | : | |
| JEFFREY SOLOMON SIMPSON, | : | Case No. 26-10359 (LGB) |
| | : | |
| Debtor | : | |
| --------------------------------------------------------------------- X | | |
| JEFFREY SOLOMON SIMPSON, as Debtor and Debtor in Possession, | : : | |
| | : | Adv. Pro. No. 26-01013 (LGB) |
| Plaintiff, | : | |
| | : | |
| -against- | : | |
| | : | |
| ERIC HUEBSCHER, as Receiver of Certain Assets of JJ Arch, and JARED CHASSEN, | : : | |
| | : | |
| Defendants. | : | |
| ----------------------------------------------------------------------X | | |

**MEMORANDUM OF LAW OF RECEIVER**
**IN SUPPORT OF MOTION TO**
**DISMISS COUNTS II-VI OF AMENDED COMPLAINT**

**FARRELL FRITZ, P.C.**

Martin G. Bunin
622 Third Avenue, Suite 37200
New York, New York 10017
Telephone: (212) 687-1230
Email: mbunin@farrellfritz.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iv

STATEMENT OF FACTS ................................................................................................. 1

The Appointment of the Receiver, the Failure of Plaintiff to Appeal the Appointment Order and His Failed Attempt in the State Court to Remove the Receiver ............................................. 1

The Original Complaint ................................................................................................. 3

The Amended Complaint ................................................................................................. 4

    The Second Claim for Relief in the Amended Complaint ................................................... 4

    The New Claims for Relief in the Amended Complaint Comprise a Frontal Assault on the Receivership in a Court that did not Appoint the Receiver ................................................... 5

ARGUMENT ................................................................................................. 6

Point I

    THE COURT SHOULD DISMISS THE NEW CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION ................................................................................................. 6

        A.    This Court Lacks Jurisdiction Because Plaintiff has Sued the Receiver Outside the Receivership Court in Violation of the Barton Doctrine ......... 6

            1.    The Barton Doctrine Bars Suits Against Court-Appointed Receivers Without Leave of the Appointing Court ........................ 6

            2.    No Exception to the Barton Doctrine Applies ................................. 9

            3.    The Proper Forum for the Debtor's Challenge is the State Court ..................................................................................... 11

            4.    Retroactive Leave Cannot Cure the Barton Doctrine ................... 12

        B.    This Court Also Lacks Jurisdiction Over the New Claims by Application of the Rooker-Feldman Doctrine ......................................... 12

Point II

    THE SECOND AND SIXTH CLAIMS FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED ................................................................................................. 15

        A.    Claim Two of the Amended Complaint Should Be Dismissed Because The Automatic Stay Does Not and Should Not Extend to Non-Debtor Property ................................................................................................. 15

B. The Sixth Claim for Relief does not Seek any Relief Against the Receiver. ...................................................................................... 16

Point III

JOINDER .................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bartolini v. Mongelli*,
2018 WL 6333827 (W.D.N.Y. Nov. 7, 2018) ........................................................................ 13

*Barton v. Barbour*,
104 US 126 (1881) ................................................................................................................... 6

*Bayview Loan Servicing LLC v. Fogarty (In re Fogarty)*,
39 F4th 62 (2d Cir. 2022) ...................................................................................................... 16

*In re Biebel*,
2009 WL 1451637 (Bankr. D. Conn. May 20, 2009) .............................................................. 7

*Cassini v. County of Nassau*, 22-CV-01696 (DG),
2024 WL 3823205 (E.D.N.Y. Aug. 12, 2024) ................................................................. 12, 13

*Charles v. Levitt*,
716 Fed Appx 18 (2d Cir. 2017) ........................................................................................... 13

*Citizens for Resp. & Ethics in Wash. v. Trump*,
953 F.3d 178 (2d Cir. 2019) .................................................................................................... 6

*Dorce v. City of New York*,
2 F.4th 82 (2d Cir. 2021) ....................................................................................................... 12

*In re DMV Marine LLC*,
509 BR 497 (Bankr. E.D. Pa. 2014) ........................................................................ 8, 9, 10, 11

*Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*,
410 F.3d 17 (1st Cir. 2005) .................................................................................................... 13

*Hoblock v. Albany County Board of Elections*,
422 F.3d 77 (2d Cir. 2005) ..................................................................................................... 12

*Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
460 BR 106, 116 (Bankr S.D.N.Y. 2011) ................................................................................ 7

*In re Lehal Realty Associates v. Scheffel*,
101 F.3d 272 (2d Cir 1996) .................................................................................................... 10

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) .................................................................................................... 6

*McIntire v. China MediaExpress Holdings, Inc.*,
    113 F.Supp.3d 769 (S.D.N.Y. 2015)......................................................................... 6, 7, 8, 12

*Phillips ex rel. Green v. City of New York*,
    453 F. Supp. 2d 690 (S.D.N.Y. 2006).......................................................................... 13

*Picard v. Greenwich Fairfield, Ltd.*,
    762 F.3d 199 (2d Cir. 2014)......................................................................................... 16

*Queenie, Ltd. v. Nygard Intern.*,
    321 F.3d 282 (2d Cir. 2003)................................................................................... 15, 16

*Rehab. Support Servs., Inc. v. Town of Esopus, New York*,
    226 F. Supp. 3d 113 (N.D.N.Y. 2016)........................................................................ 12

*Remy v. New York State Dep't of Taxation and Finance*,
    507 F. App'x 16 (2d Cir. 2013) .................................................................................. 12

*Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,*
    896 F.2d 674 (2d Cir. 1990)........................................................................................... 6

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    460 BR 106 (Bankr S.D.N.Y. 2011) ......................................................................... 7, 8

*Teachers Insurance and Annuity Ass'n v. Butler*,
    803 F.2d 61 (2d Cir. 1986)........................................................................................... 15

*Vass v. Conron Bros.*,
    59 F.2d 969 (2d Cir 1932).............................................................................................. 7

*Xu v. Suffolk Cnty.*,
    2020 WL 3975471 (E.D.N.Y. July 14, 2020) ............................................................ 13

*Zappin v. Collazo,*
    2020 WL 5646496 (S.D.N.Y. Sept. 22, 2020)............................................................. 6

**Statutes**

11 U.S.C. § 362 (a) ............................................................................................................. 15

28 U.S.C. § 959 ............................................................................................................... 9, 10

**Rules**

CPLR 6401 ............................................................................................................................ 13

Federal Rules of Civil Procedure Rule 12(b)............................................................ 1, 6, 12, 15

Federal Rules of Bankruptcy Procedure Rule 7012(b) ........................................................... 1

Defendant Eric M. Huebscher, not individually but solely in his capacity as court-appointed receiver (the "Receiver"), by his attorneys, Farrell Fritz, P.C., submit this memorandum of law in support of his motion, under Rules 12(b)(1) & (6) of the Federal Rules of Civil Procedure, made applicable in this adversary proceeding pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, to dismiss counts II-VI of the amended complaint (the "Amended Complaint") of plaintiff Jeffrey Solomon Simpson ("Plaintiff") in this adversary proceeding.

## STATEMENT OF FACTS

1. Debtor and plaintiff Jeffrey Solomon Simpson (the "Plaintiff") filed the Amended Complaint in this adversary proceeding on April 28, 2026 (ECF Doc. No. 33) against the Receiver and Jared Chassen ("Chassen").

2. The Receiver is the temporary receiver appointed in the action entitled *Jeffrey Simpson, et al. v. Jared Chassen, et al.*, Index No. 158055/2023 (Supreme Court, County of New York: Commercial Division) (the "State Court Action").

**The Appointment of the Receiver,
the Failure of Plaintiff to Appeal the Appointment Order and
His Failed Attempt in the State Court to Remove the Receiver**

3. By order dated March 11, 2025 (the "Receiver Order") (NYSCEF Doc. No. 1360),[1] the court presiding over the State Court action (the "State Court") appointed the Receiver as temporary receiver over (1) the managerial and membership interests of JJ Arch LLC in the JJ Arch Controlled Entities, a term defined in the Receiver Order to include 1640 Montauk LLC, 1640 Motors LLC d/b/a Rêver Motors ("Rêver Motors"), 146 E 89 Borrowers 1, 2 and 3 LLC, JJ

---

[1] "NYSCEF" refers to the New York State Courts Electronic Filing system, and citations to NYSCEF refer to specific filings in the State Court Action or the other actions referenced herein, as the context dictates. Due to the voluminous filings in the State Court Action, in lieu of being physically attached as exhibits, most of the documents are cited to the NYSCEF record with hyperlinks.

NY 550 LLC and 225 HPR LLC, (2) the JJ Arch Controlled Properties, a term defined in the Receiver Order to include the business of Rêver Motors and the property on which it conducts business located at 1640 Montauk Highway, Water Mill, New York (the "1640 Montauk property"), the townhouse located at 146 East 89th Street, New York, New York, the retail condo unit located at 550 Metropolitan Avenue, Brooklyn, New York and the residential property located at 225 Head of Pond Road, Water Mill, New York and (3) JJ Arch's bank accounts, records and funds, and the JJ Arch Controlled Entities' funds, assets, properties and bank accounts (Receiver Order, p. 2).

4.  The Receiver Order granted the Receiver "complete and sole managerial authority" over the JJ Arch Controlled Entities and JJ arch Controlled Properties (Receiver Order [NYSCEF Doc. No. 1360], p.3).  It authorizes the Receiver to, among other things, manage, rent, lease, sell or develop the JJ Arch Controlled Properties and to take such other steps to dispose of the receivership assets as he deems necessary to maximize the value of the JJ Arch Controlled Entities and JJ Arch Controlled Properties (*Id.*, pp. 3-4).

5.  The Plaintiff did not appeal the Receiver Order.  The time to appeal the Receiver Order has expired.

6.  On May 12, 2025, the court in the State Court Action issued an order compelling the Plaintiff to comply with the Receiver Order (the "Enforcement Order") (NYSCEF Doc. No. 1637 [originally filed to NYSCEF Doc. No. 1508], p. 2).

7.  The Plaintiff did not appeal the Enforcement Order. The time to appeal the Enforcement Order has expired.

8.  On November 26, 2025, the Plaintiff moved by order to show cause in the State Court Action (NYSCEF Doc. Nos. 2114-2120) for (a) a preliminary injunction "enjoining

implementation of the Receivership Orders [the Receiver Order and the Enforcement Order] based upon (a) Defendant Jared Chassen's disputed standing to move for the Receivership Orders, and/or (b) the Receiver's failure to faithfully discharge his duties thereunder", (b) "[r]emoving the Receiver on such grounds. . .", and (c) "ordering payment of the Receiver's Bond . . . and granting leave to commence an action against the Receiver. . ." (order to show cause, p. 2, NYSCEF Doc. No. 2114).

9. Following the filing of opposition to motion by the Receiver (NYSCEF Doc. No. 2145) and by defendant Jared Chassen (NYSCEF Doc. No. 2146) and argument thereon, the State Court, on December 12, 2025, declined to sign the order to show cause (NYSCEF Doc. No. 2168) and entered an order "on this Motion to REMOVE RECEIVER" (NYSCEF Doc. No. 2169 [upper case letters in original]). The State Court held that, "[f]or the reasons stated on the record following oral argument on December 11, 2025, the Court declines to sign Plaintiff's Order to Show Cause" (*Id.*).

10. The Plaintiff did not appeal the December 12, 2025 order. The time to appeal the December 12, 2025 order has expired.

**The Original Complaint**

11. On February 20, 2026, the Plaintiff filed the original complaint in this adversary proceeding against the Receiver (the "Original Complaint") alleging two claims for relief: a claim to enforce the automatic stay by enjoining the sale of the assets of 1640 Motors LLC d/b/a Rêver Motors (the "Auction") until this Court determines whether property of the Debtor is included in the sale and a claim to enjoin the shutdown of the Rêver Motors business since the shutdown would purportedly expand the Plaintiff's liabilities and impede his reorganization efforts (ECF No. 1).

Together with the Original Complaint, the Plaintiff filed a motion seeking a preliminary injunction and the enforcement and expansion of the automatic stay (ECF No. 2).

12. On March 25, 2026, this Court granted in part and denied in part the preliminary injunction motion (Order Granting in Part and Denying in Part Plaintiff's Motion for Injunctive Relief Enforcing and Expanding the Automatic Stay ["Order on Preliminary Injunction Motion"], ECF No. 22), thereby allowing the Debtor an opportunity to visit the Rêver Motors business premises to identify items of personal property he believes belong to him and then to submit documentation to support his claims of ownership. The Court (i) temporarily enjoined the Auction until the dispute over the items of personal property at Rêver Motors the Plaintiff claims he personally owns is resolved and (ii) denied the expansion of the automatic stay to prevent the shutdown of the Rêver Motors business.[2]

13. On April 7, 2026, the Receiver filed an Answer to the Original Complaint, thereby denying that Plaintiff was entitled to the relief sought therein (ECF. No.27).

### The Amended Complaint

### The Second Claim for Relief in the Amended Complaint

14. By the Second Claim for Relief in the Amended Complaint (the "Second Claim"), which is identical to the second claim for relief in the Original Complaint, the Plaintiff again seeks to enjoin the "shutdown of the [Rêver Motors] business and concomitant loss of value of the underlying real property due to the imposition of zoning restrictions" which allegedly will cause economic harm to the Plaintiff by increasing his liability on his personal guaranty of the mortgage

---

[2] As indicated in the Receiver's opposition to the preliminary injunction motion, the Receiver did not operate Rêver Motors (Declaration of Eric M. Huebscher in opposition to Plaintiff's motion for injunctive relief, ECF No. 12 , at ¶¶ 13-15). The Plaintiff operated Rêver Motors in violation of the Receiver Order and the Enforcement Order until late June 2025, when the Receiver regained possession of Rêver Motors and the 1640 Montauk property and began to return vehicles to Rêver Motors' secured lender and customers (*id*, at ¶¶ 15, 52).

loan on the 1640 Montauk property where Rêver Motors did business (Amended Complaint, ¶¶ 43-44) . Despite the denial by this Court of the portion of the preliminary injunction motion seeking to enjoin the shutdown of the Rêver Motors business, Plaintiff in the Amended Complaint again seeks to expand the automatic stay to prevent its shutdown.

**The New Claims for Relief in the Amended Complaint Comprise a Frontal Assault on the**
**<u>Receivership in a Court that did not Appoint the Receiver</u>**

15. The Amended Complaint adds new claims for relief, including the Third, Fourth and Fifth Claims for Relief (hereinafter referred to as the "Third Claim", "Fourth Claim" and "Fifth Claim"), that amount to a frontal assault on the Receivership. The Amended Complaint does not identify which of the defendants the new claims for relief are asserted against. By the Third Claim, Plaintiff seeks a declaratory judgment from this Court that Chassen lacked standing in the State Court Action to seek the appointment of a receiver as the result of an agreement dated August 1, 2023 among Chassen, the Plaintiff and YJ Simco LLC (Amended Complaint, ¶¶45-62). By the Fourth Claim, Plaintiff seeks an order from this Court terminating the receivership established by the State Court and directing the Receiver to "pay all moneys in his possession, custody or control" into this Court (Amended Complaint, ¶54). By the Fifth Claim, Plaintiff seeks an order directing the Receiver to provide this Court with an accounting of his acts as Receiver in the State Court Action (Amended Complaint, ¶56).

16. Additionally, the Amended Complaint adds a new Sixth Claim for Relief (the "Sixth Claim") seeking alternative relief against Chassen if the Court determines that the agreement dated August 1, 2023 is not enforceable (Amended Complaint, ¶¶ 57-58). The Sixth Claim does not appear to seek any relief against the Receiver

17. The Plaintiff neither sought nor obtained permission and authority from the State Court to assert the Third, Fourth and Fifth Claims for Relief in his Amended Complaint against the Receiver.

## ARGUMENT

### Point I

### THE COURT SHOULD DISMISS THE NEW CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION

**A. This Court Lacks Jurisdiction Because Plaintiff has Sued the Receiver Outside the Receivership Court in Violation of the Barton Doctrine**

**1. The Barton Doctrine Bars Suits Against Court-Appointed Receivers Without Leave of the Appointing Court**

The Barton Doctrine is a longstanding principle of federal common law, developed by the Supreme Court in *Barton v. Barbour*, which provides that a party seeking to sue a court-appointed receiver must first obtain leave of the appointing court and that, absent leave of the appointing court, no other court has jurisdiction to hear a suit against the receiver. *Barton v. Barbour*, 104 US 126, 127 (1881).[3] A receiver is an officer of the court that appointed him and cannot be sued without that court's consent. *McIntire v. China MediaExpress Holdings, Inc.*, 113 F.Supp.3d 769, 772 (S.D.N.Y. 2015).

The Second Circuit has recognized that the Barton Doctrine extends to bankruptcy as well as receivership, and lower courts have applied it to declaratory judgment actions as well as suits

---

[3] An action is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure when the district court lacks the statutory or constitutional power to adjudicate it." *Citizens for Resp. & Ethics in Wash. v. Trump,* 953 F.3d 178, 188 (2d Cir. 2019) (internal quotation marks omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A court must resolve whether it has subject matter jurisdiction before it considers the merits. *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir. 1990); *accord Zappin v. Collazo,* 2020 WL 5646496, at *3 (S.D.N.Y. Sept. 22, 2020). Further, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court…may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

seeking damages. *See Vass v. Conron Bros.*, 59 F.2d 969, 971 (2d Cir 1932); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 460 BR 106, 116 (Bankr S.D.N.Y. 2011) (hereinafter *Madoff)*; *In re Biebel*, 02-32865, 2009 WL 1451637 at *4 (Bankr. D. Conn. May 20, 2009). More significantly, courts have expressly recognized that the Barton Doctrine applies to "***all proceedings involving receivers*** – not bankruptcy alone." *See McIntire*, 113 F.Supp.3d at 773 (emphasis added). The Barton Doctrine serves to protect the receivership court's "overriding interest in [the] administration of the estate", *id.*, thereby preventing litigants from circumventing the appointing court's supervisory authority over its receiver.

The Plaintiff's Third Claim seeks a "declaration that Mr. Chassen had no standing to seek the appointment of the Receiver" (Amended complaint at p. 18). Similarly, the Plaintiff's Fourth Claim seeks an "order terminating the receivership in accordance with article 64 of the CPLR and other applicable law" (Amended Complaint, p. 18). The Plaintiff's Fifth Claim seeks an order "directing the Receiver to provide this Court with a complete and public accounting of actions taken, and moneys received and disbursed, pursuant to article 64 of the CPLR and other applicable law" (Amended Complaint at 18-19). The Plaintiff did not obtain leave of the appointing court, here the State Court, before alleging the Third, Fourth and Fifth Claims in this adversary proceeding challenging the legitimacy and continuation of the receivership. The Barton Doctrine squarely bars these claims.

The Barton Doctrine is not limited to suits seeking damages against a receiver. *McIntire*, 113 F.Supp.3d at 773. In *McIntire*, the court applied the Barton Doctrine to enjoin an arbitration seeking declaratory relief against a receiver regarding insurance coverage, finding that "the declaratory relief sought in the arbitration action involves the very assets that the Receiver was appointed to marshal" (*id.*, at 773-74). Similarly, in *Madoff*, the court applied the Barton Doctrine

to enjoin a declaratory judgment action brought against a court-appointed trustee. *Madoff*, 460 B.R. at 116.

Here, the relief the Plaintiff seeks in the new claims for relief is far more intrusive than the declaratory relief at issue in *McIntire*. While the insurers in *McIntire* sought a coverage determination, the Plaintiff here seeks to terminate the receivership entirely and to direct the Receiver to "pay all moneys in his possession, custody or control into court" (Amended Complaint at 18). Such relief would directly and fundamentally interfere with the State Court's appointment and control over the receivership and the property subject to it. *See In re DMV Marine LLC*, 509 BR 497, 503-504 (Bankr. E.D. Pa. 2014) (avoiding interference with receivership court's control over receivership property is a core principle of Barton Doctrine). The State Court appointed the Receiver with the authority to "manage, rent, lease, sell or develop the JJ Arch Controlled Properties, and take any other steps reasonably necessary to maximize the remaining equity belonging to the JJ Arch Controlled Entities" (Receiver Order, at pp. 3-4). Permitting this Court to terminate that receivership without leave of the appointing court would deprive the State Court of its authority to administer the receivership estate, a result the Barton Doctrine is intended to prevent.

The Plaintiff's demand for an accounting is equally intrusive. A court-ordered accounting of a receiver's actions, receipts, and disbursements is a core function of the appointing court's supervision over its appointed officer. Compelling the Receiver to account before a court other than the appointing court would usurp the State Court's supervisory authority over its own officer and the administration of the receivership estate, precisely the result the Barton Doctrine is intended to prevent. The State Court which appointed the Receiver is the proper, and the only, forum to evaluate the Receiver's stewardship and to review the Receiver's accounting to the State

Court required by the CPLR. Permitting this Court to terminate the receivership or to compel the Receiver to render an accounting without leave of the appointing court would deprive the State Court of its authority to administer the receivership estate, a result the Barton Doctrine was specifically designed to prevent.

### 2. No Exception to the Barton Doctrine Applies

Courts have traditionally recognized two exceptions to the Barton Doctrine: the "business" exception, codified at 28 U.S.C. § 959 (a), and the "ultra vires" exception (*see In re DMV Marine LLC*, 509 BR at 504).

The "business" exception is a narrow statutory exception that "permits a receiver to be sued in a non-receivership court for his or her actions performed while 'carrying on [the] business'" (*id.*). However, this exception "applies only to acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise" (*id.*). The exception is exemplified by the "common situation of a negligence claim in a slip and fall case where a bankruptcy trustee, for example, conducted a retail store" (*id.*). Critically, the exception is "not intended to permit actions against a receiver in a non-receivership forum for alleged misconduct in the administration of receivership property" (*id.*).

The Plaintiff's claims do not allege any tort committed against a third-party doing business with the receivership entity. Rather, the Debtor challenges the very foundation of the Receiver's appointment by contesting the standing of the party who sought it, seeks to terminate the receivership itself, and demands an accounting of the Receiver's administration of receivership property. A demand for an accounting of the Receiver's receipts, disbursements, and actions taken is not a claim arising from the Receiver's conduct of a business; it is a challenge directed at the Receiver's administration of the receivership estate, which falls outside the business exception. As

the Second Circuit made clear in *In re Lehal Realty Associates*, "[28 U.S.C.] § 959 does not apply where, as here, a trustee acting in his official capacity conducts no business connected with the property other than to perform administrative tasks necessarily incident to the consolidation, preservations, and liquidation of assets in the debtor's estate" *In re Lehal Realty Associates v. Scheffel*, 101 F.3d 272, 276 (2d Cir 1996). Accordingly, the "business" exception to the Barton Doctrine is inapplicable here.

Under the "ultra vires" exception, "a receiver loses the protection of the Barton Doctrine for actions that are beyond the scope of his or her duties authorized by the receivership court" *In re DMV Marine LLC*, 509 B.R. at 506). The classic application of this exception involves "an action against a receiver who seizes or otherwise attempts to administer property that is not receivership property, but that actually belongs to a third party" (*id.*). Courts have significantly narrowed this exception over time. Under the prevailing line of cases, "all actions for damages against receivers, with the possible exception of damage actions arising from the wrongful seizure of non-receivership property, are subject to the Barton Doctrine and fall outside the 'ultra vires' exception (*id.*, at 508).

The Plaintiff does not allege in his new claims for relief that the Receiver seized or controlled non-receivership property through ultra vires conduct. Rather, the Plaintiff's claims challenge the standing of the party who sought the receivership and the legitimacy of the receivership itself, and the Receiver's administration of receivership assets through the demand for an accounting – matters squarely within the province of the appointing court. Any challenge to the propriety of that appointment, the continuation of the receivership, or the Receiver's stewardship of receivership property must be raised before the appointing court. The "ultra vires"

10

exception does not provide a basis for circumventing the Barton Doctrine under these circumstances.

### 3. The Proper Forum for the Debtor's Challenge is the State Court

The Plaintiff's remedy, if any, lies with the State Court that appointed the Receiver. The Barton Doctrine exists precisely to ensure that the appointing court retains control over the receivership and the officers it has appointed. Determinations regarding the Receiver's appointment, authority, and the continuation of the receivership "are ones that the receivership court is far better suited to make" *In re DMV Marine LLC*, 509 B.R. n 16. As applicable here, the State Court has overseen the receivership proceedings, issued the orders governing the Receiver's authority, and possesses the institutional knowledge necessary to evaluate any challenge to the receivership. The State Court is likewise the proper forum to review the Receiver's accounting when it is rendered, as it is the court that appointed the Receiver, defined the scope of his authority, and retains supervisory jurisdiction over the Receiver's conduct in the administration of the receivership estate.

To the extent the Plaintiff believes that Chassen lacked standing to seek the Receiver's appointment, that the receivership should be terminated, or that the Receiver should be compelled to provide an accounting, the proper course is to seek such relief from the State Court. The Barton Doctrine mandates "a plaintiff who wishes to bring an action against the receiver outside of the receivership court must first obtain permission of the receivership court, which should not be granted absent a prima facie showing to the receivership court of the merits of the claim" (*id.*, at 503). The Plaintiff has not made any such showing and has not sought any such permission.

**4.** **<u>Retroactive Leave Cannot Cure the Barton Doctrine</u>**

The Plaintiff cannot cure the jurisdictional defect by seeking retroactive leave to assert claims against the Receiver.

The Barton Doctrine is jurisdictional in nature. A plaintiff's failure to obtain prior leave from the appointing court "bars exercise of subject matter jurisdiction over any third party suit" *McIntire*, 113 F.Supp.3d at 774. Accordingly, when the Barton Doctrine is violated, "[t]he only appropriate remedy … is to order cessation of the improper action" *Id.*, at 774. A complaint filed without leave of the appointing court is "void *ab initio* for violation of the Barton Doctrine" *Id.*

Accordingly, the Plaintiff is barred from obtaining leave to cure his Barton Doctrine failure.

**B. This Court Also Lacks Jurisdiction[4] Over the New Claims by Application of the *Rooker-Feldman* Doctrine**

Plaintiff's claims seeking to vacate the state court receivership and specifically the Receiver Orders entered by the State Court for which the time to appeal lapsed must be dismissed under the *Rooker-Feldman* doctrine. "The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases." *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021). The doctrine applies when (1) the federal-court plaintiff lost in state court; (2) plaintiff complains of injuries caused by the state court judgment or interlocutory order; (3) plaintiff invites the district court to review and reject those judgments or orders; and (4) the state court judgments or orders were rendered prior to the filing of the federal action. *Hoblock v. Albany County Board of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).

---

[4] A motion to dismiss based on an abstention doctrine, including the *Rooker-Feldman* doctrine, is properly brought under Fed. R. Civ. P. 12(b)(1). *See Rehab. Support Servs., Inc. v. Town of Esopus, New York*, 226 F. Supp. 3d 113, 125 (N.D.N.Y. 2016); *Remy v. New York State Dep't of Taxation and Finance*, 507 F. App'x 16, 18 (2d Cir. 2013).

The doctrine does not only apply to final judgments but also applies to interlocutory orders where "the state courts finally resolve[s] the issue that the federal court plaintiff seeks to relitigate in a federal forum." *Cassini v. County of Nassau*, 22-CV-01696 (DG), 2024 WL 3823205, at *15 (E.D.N.Y. Aug. 12, 2024). This is true even if the state court proceedings are otherwise ongoing. *Id.* at *17. Courts in the Second Circuit have concluded that "*Rooker-Feldman* applies where the state proceeding has ended *with respect to the issues that the federal plaintiff seeks to have reviewed in federal court,* even if other matters remain to be litigated." *See Phillips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690, 714 (S.D.N.Y. 2006) (quoting *Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17, 25 (1st Cir. 2005)*; see also Xu v. Suffolk Cnty.*, 2020 WL 3975471, at *3-6 (E.D.N.Y. July 14, 2020) (*Rooker-Feldman* applied to final Surrogate's Court decision that was on appeal and proceedings were ongoing in the Surrogate's Court after the federal case was filed); *Bartolini v. Mongelli*, 2018 WL 6333827, at *2, 6-7 (W.D.N.Y. Nov. 7, 2018) (applying *Rooker-Feldman* to final Surrogate's Court decree denying probate of a contested will, despite the existence of an ongoing accounting proceeding in Surrogate's Court). Thus, where the plaintiff has "appealed and lost, or failed to appeal before the time for doing so had expired," the order is final and a suit seeking to relitigate the issue is barred by the *Rooker-Feldman*-Doctrine. *Cassini,* 2024 WL 3823205, at *15.

The *Rooker-Feldman Doctrine* bars challenges to receivership orders that could have been appealed, but were not appealed, and are thus final. *Id.* at *16. (holding that party barred under *Rooker-Feldman* from relitigating in federal court orders authorizing receiver to take possession of assets and sell them); *cf. Charles v. Levitt,* 716 Fed Appx 18, 22 (2d Cir. 2017) (complaint properly dismissed under *Rooker-Feldman* where it was "singular focus[ed] on allegedly wrongful actions related to the state court's imposition and execution of the Property's receivership.").

Each prong supporting the application of the *Rooker-Feldman* Doctrine applies here. In March 2023, the State Court entered the Receiver Order appointing a temporary receiver under CPLR 6401, which provides that the state court may appoint a temporary receiver upon the motion "of a person having an apparent interest in property which is the subject of an action in the supreme or a county court . . . where there is danger that the property will be removed from the state, or lost, materially injured or destroyed." In entering the Receiver Order, the State Court found that Chassen had established "at a minimum, an apparent interest in property" that was the subject of the State Court Action (State Court's ruling on Chassen's motion to appoint a temporary receiver, February 28, 2025 hearing transcript, NYSCEF Doc. 1371, p. 332 lns. 16-19) and that there was a danger that the property would be "lost, materially injured or destroyed" if a receiver were not appointed. "In fact," held the State Court, "I think the record indicates a real interest in the property" (Id., Hearing Transcript, p. 332 lns 19-20). The Plaintiff had 30 days to appeal the Receiver Order following notice of entry (Notice of Entry of Decision & Order granting the motion to appoint a receiver filed on May 1, 2025, NYSCEF Doc. No. 1476, and Notice of Entry of Order Appointing Temporary Receiver filed on May 1, 2025, NYSCEF Doc. No. 1477). The Plaintiff did not do so, rendering the Receiver Order no longer subject to challenge.

The claims asserted in the Amended Complaint clearly and directly overlap with the claims concerning the receivership asserted in the State Court Action. Indeed, the Amended Complaint seeks to essentially renew and reargue and vacate the Receiver Order entered in the State Court Action, an action which is quite clearly not before this Court. He claims essentially that Chassen lacked standing to bring the Receiver Motion because years earlier he entered into the August 2023 Agreement whereby he had agreed to convey some of his interests in the receivership assets to YJ Simco. The Amended Complaint is a direct attack on a final state court order by the Plaintiff as

14

the state court loser long after the State Court entered the final Receiver Order. This is fatal to Plaintiff's New Claims, irrespective of the other fatal defects addressed herein and in Chassen's motion to dismiss the Amended Complaint.

**Point II**

**THE SECOND AND SIXTH CLAIMS FAIL TO STATE A
CLAIM FOR WHICH RELIEF CAN BE GRANTED**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss a case for "failure to state a claim upon which relief can be granted."

**A. Claim Two of the Amended Complaint Should Be Dismissed Because The Automatic Stay Does Not and Should Not Extend to Non-Debtor Property**

Plaintiff acknowledges that the assets of 1640 Montauk and 1640 Motors do not belong to him or his bankruptcy estate. Rather, Plaintiff is member of JJ Arch (with Chassen owning the minority interest) which entity is the sole member of 1640 Montauk, which owns the 1640 Montauk Property, and 1640 Motors, which operated the defunct Rêver Motors business. The assets of both 1640 Montauk and 1640 Motors are receivership assets under the control of the Receiver.

The protections of the bankruptcy automatic stay are afforded only to the debtor that is the subject of the bankruptcy case. *Teachers Insurance and Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986). The automatic stay afforded to debtors by § 362(a) of the Bankruptcy Code "can apply to non-debtors, but normally does so only when allowing claim against the non-debtor to proceed will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard Intern.*, 321 F.3d 282, 287 (2d Cir. 2003). The *Queenie* court gave three examples of circumstances where it may be appropriate to extend the protections of the automatic stay to

non-debtors: a claim to establish an obligation of which the debtor is a guarantor, a claim against the debtor's insurer and claims against a non-debtor where there is such an identity between the debtor and the non-debtor such that the debtor can be considered the real party in interest. *Id.*, at 287-88.

Here, the cessation of the business operating on the 1640 Montauk Property in anticipation of the sale does not fit into any of the examples listed in *Queenie* and the Plaintiff has not cited to any decision in which a court has extended the automatic stay to prevent a nondebtor from disposing of its property in a manner that might hypothetically result in the deficiency on a loan guaranteed by the debtor. The possibility of the occurrence of a loan deficiency at a later date is not an "immediate" adverse economic consequence of the kind described in *Queenie*.

The Second Circuit has further held that in order for the automatic stay to be applied to actions against non-debtors, the adverse impact on the debtor must "occur[] by operation of law." *Bayview Loan Servicing LLC v. Fogarty (In re Fogarty)*, 39 F4th 62, 75 (2d Cir. 2022) (quoting *Picard v. Greenwich Fairfield, Ltd.* 762 F.3d 199, 208 (2d Cir. 2014)). In contrast, the automatic stay does not bar "actions taken against third parties that are only factually likely, as opposed to legally certain, to impact estate property." *Fogarty*, 39 F.4th at 75 (*quoting Greenwich Fairfield, Ltd.*, 762 F.3d at 208)).

The Second Claim fails to state a claim for which relief can be granted because the facts pled by Plaintiff, even if accepted as true, do not comprise cause to extend the automatic stay.

**B. The Sixth Claim for Relief does not Seek any Relief Against the Receiver.**

The Sixth Claim should be dismissed against the Receiver for failure to state a claim upon which relief can be granted since, as stated, it only seeks relief against Chassen and seeks no relief against the Receiver.

**Point III**

**<u>JOINDER</u>**

The Receiver joins in the motion of Chassen to dismiss the Amended Complaint insofar as it seeks the dismissal of the Second, Third, Fourth and Fifth Claims on the grounds set forth in his motion.

WHEREFORE, the Receiver respectfully requests that the Court enter an Order (1) dismissing the Second, Third, Fourth and Fifth Claims for Relief in the Amended Complaint, (2) dismissing the Sixth Claim for Relief in the Amended Complaint as against the Receiver and (3) granting such other relief as this Court deems appropriate.

Dated: May 29, 2026
  New York, New York

**FARRELL FRITZ, P.C.**

By: /s/ *Martin G. Bunin*
  Martin G. Bunin
  622 Third Avenue, Suite 37200
  New York, New York 10017
  Telephone: (212) 687-1230
  Email: mbunin@farrellfritz.com

FF\50815793.1