KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
(212) 972-3000
Sean C. Southard, Esq.
ssouthard@klestadt.com

-and-

SCHWARTZ LAW PLLC
Allen Schwartz, Esq.
150 Broadway, Suite 701
New York, New York 10038
347-460-5379
allen@allenschwartzlaw.com

*Counsel for Jared Chassen*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| JEFFREY SOLOMON SIMPSON, | : | Case No. 26-10359 (LGB) |
| Debtor. | : | |
| JEFFREY SOLOMON SIMPSON, as Debtor and Debtor in Possession, | : | Adv. Pro. No. 26-01013 (LGB) |
| Plaintiff, | : | |
| v. | : | |
| ERIC HUEBSCHER, as Receiver of Certain Assets of JJ Arch, | : | |
| Defendant. | : | |

**JARED CHASSEN'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO ABSTAIN AND DISMISS ADVERSARY PROCEEDING**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

    I.       Simpson Ignores the Anti-Removal Injunction in his Opposition .................................. 3

    II.      The District Court Rejected Simpson's Argument that Justice Cohen's March 10, 2026 Court Notice Provides a Basis for Relief from the Anti-Removal Injunction ........................... 6

    III.     Colorado River Abstention Supports Dismissal ............................................................. 7

    IV.     Wilton Abstention Supports Dismissal ........................................................................ 10

    V.      Rooker-Feldman Supports Abstention ........................................................................ 11

    VI.     Simpson's Failure to Plead a Specific Performance Claim is Fatal and He Cannot Obtain Leave to Replead ........................................................................................................ 12

    VII.    Simpson Concedes that He Lacks Standing to Pursue Claims on Behalf of YJ Simco LLC and 1640 Motors LLC and that He Fails to Plausibly Allege his Sixth Claim ................. 13

    VIII.   Simpson Has No Viable Response to Collateral Estoppel and Judicial Estoppel ........ 14

    IX.     Simpson Does Not Explain How the Court Can Vacate Interim State Court Orders Relating to Non-Debtor Assets in Plenary Adversary Proceedings ......................................... 15

CONCLUSION .................................................................................................................... 15

<u>**TABLE OF AUTHORITIES**</u>

**CASES**

*Cohen v Am. Airlines, Inc.*, 13 F4th 240 (2d Cir. 2021)
...................................................................................................................................... 10

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)
...................................................................................................................................... 12

*Great American Insurance Company v. Arch Real Estate Holdings*, Case No. 26-01015 (LGB)
    (Bankr. S.D.N.Y.)
...................................................................................................................................... 10

*Great American Insurance Company v. Arch Real Estate Holdings, LLC*, et. al., 1:26-04833-JAV
    (S.D.N.Y. June 23, 2026)
.......................................................................................................................... 1, 9, 10

*Hodnett v Medalist Partners Opportunity Master Fund II-a, L.P.*, 1:21-CV-00038-MKV, 2021
    WL 535485 (S.D.N.Y. Feb. 12, 2021)
...................................................................................................................................... 12

*In re Community Mgt. Corp. of Maryland*, 91 Fed Appx 808 (4th Cir. 2003)
........................................................................................................................................ 7

*In re Jandous Electric Constr.*, 106 B.R. 48 (Bankr. S.D.N.Y. 1989)
........................................................................................................................................ 8

*In re JJ Arch LLC*, 663 B.R. 258, 260 (Bankr. S.D.N.Y. 2024), *aff'd* 24-CV-08649 (JAV), 2026
    WL 1622865 (S.D.N.Y. June 5, 2026)
........................................................................................................................................ 5

*In re JJ Arch LLC.*, 24-10381 (JPM), 2024 WL 2933427 (Bankr. S.D.N.Y. June 10, 2024)
........................................................................................................................................ 5

*In re Simpson*, 26-10359-lgb (S.D.N.Y.)
..................................................................................................................................... 5, 8

*In re SVB Fin. Group*, 671 B.R. 351 (Bankr. S.D.N.Y. 2025)
........................................................................................................................................ 9

*In re Telluride Glob. Dev., LLC*, 380 B.R. 585 (10th Cir BAP 2007)
........................................................................................................................................ 7

*McGee v State Farm Mut. Auto. Ins. Co.*, 684 F. Supp. 2d 258 (E.D.N.Y. 2009)
...................................................................................................................................... 10

*Miller v Calotychos*, 303 F. Supp. 2d 420 (S.D.N.Y. 2004)
...................................................................................................................................... 10

*Nazario v Deere & Co.*, 295 F Supp 2d 360 (S.D.N.Y. 2003)
...................................................................................................................................... 10

*People v Abbott Manor Nursing Home*, 112 A.D.2d 40 (4th Dep't 1985)
...................................................................................................................................... 14

*Queenie, Ltd v. Nygard Intl.*, 321 F.3d 282 (2d Cir. 2003)
........................................................................................................................................ 8

*Scott v JPMorgan Chase & Co.*, 13 CIV. 646 KPF, 2014 WL 338753, at *10 (S.D.N.Y. Jan. 30,
    2014)
.................................................................................................................................. 3, 14

*Simpson v Chassen*, 25-CV-04004 (JAV), 2026 WL 1584643 (S.D.N.Y. June 3, 2026) ...............
.............................................................................................................................. 2, 3, 4, 6

*Simpson v Chassen*, 25-CV-04004 (JMF), 2025 WL 1784931 (S.D.N.Y. June 27, 2025)
...................................................................................................................... 3

*Vivendi SA v T-Mobile USA Inc.*, 586 F.3d 689, 695 (9th Cir. 2009)
...................................................................................................................... 10

**STATUTES**

CPLR 5015
...................................................................................................................... 11

CPLR 6401
...................................................................................................................... 2, 15

CPLR 6415
...................................................................................................................... 15

Fed. R. Civ. P. 60
...................................................................................................................... 11

Jeffrey Simpson, through this attempted end-run around the Anti-Removal Injunction, brazenly seeks to collaterally attack the orders entered in the very action Simpson is enjoined by a federal court order from removing to this Court. In his opposition, not only does Simpson ignore the existence of the Anti-Removal Inunction, but he ignores the decision earlier this month from the District Court that unequivocally declined to grant him any relief from the Anti-Removal Injunction, finding that mandatory and permissive abstention apply to the State Court Action and that allowing Simpson to remove it would "make a mockery of the Court." *Simpson v Chassen*, 25-CV-04004 (JAV), 2026 WL 1584643, at \*2 (S.D.N.Y. June 3, 2026).[1] By ignoring the Anti-Removal Injunction, Simpson has conceded—as he must—that it mandates the dismissal of this action in which he seeks to collaterally attack and relitigate the orders, proceedings, and issues pending in the litigation that is the subject of the Anti-Removal Injunction.

And while the Anti-Removal Injunction is the proverbial elephant in the room for Simpson, Simpson instead spills his ink addressing other abstention doctrines. Many of his arguments amount to impermissible attempts to relitigate and collaterally attack District Court's June 3, 2026 ruling without mentioning the Anti-Removal Injunction. Thus, for example, Simpson relies on a purported finding in a different proceeding in which he claims this Court found that Simpson had not engaged in forum shopping that action—but in approving those proposed findings the District Court specifically clarified that it did not consider these statements from the Court to be proposed findings submitted to the District Court for approval. *See Great*

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in Chassen's moving papers.

*American Insurance Company v. Arch Real Estate Holdings, LLC*, et. al., 1:26-04833-JAV

(S.D.N.Y. June 23, 2026), ECF No. 5, Order Adopting Findings of Fact and Conclusions of Law

(Judge Vargas finding that the Court's statement about forum shopping in that action were mere

"characterizations made at a hearing in this matter," and "not proposed findings of fact or

conclusions of law submitted to the district court."). Moreover, even if these had been actual

proposed findings, the *Great American* action is inapposite to the State Court Action because of

Simpson's long-standing history of forum shopping the State Court Action, the existence of the

Anti-Removal Injunction, and the District Court's ruling this month that allowing the removal of

the State Court Action to this Court would reward Simpson's forum shopping campaign and

"make a mockery of the Court." *Simpson*, 2026 WL 1584643, at *2.

Simpson's reliance on Justice Cohen's March 2026 Court Notice is similarly misplaced,

as Justice Cohen's statements in the notice did not purport to determine the scope of the

automatic stay, the laws governing removal, or the continuance of the Anti-Removal Injunction.

Indeed, in seeking relief from the Anti-Removal Injunction, Simpson argued that the same Court

Notice supported relief from the Anti-Removal Injunction, but the District Court rejected those

arguments and refused to allow the removal of the State Court Action regardless of Justice

Cohen's Court Notice.

Simpson also claims that he is barred by the Justice Cohen's stay from seeking to vacate

the receivership in state court, but Simpson cannot claim he is handcuffed by a stay that he

himself sought: it was Simpson who requested that Justice Cohen issue a complete stay (which

Justice Cohen did, subject to this Court's determinations about the appropriate scope of the stay).

Moreover, Justice Cohen expressly said in the Court Notice he will defer to this Court's rulings

as to the scope of any stay, and Simpson may move this Court to clarify the scope of the stay or

lift it (or not oppose Chassen's pending motion) if he wishes to seek to vacate the receivership ordered in the State Court Action.

Simpson's self-serving claim that he will be *pro se* in the State Court Action is unsupported and does not allow him to collaterally attack the State Court Action. In fact, there is no evidence that he can only retain counsel in federal court but not in state court (where he was represented from August 2023 through his JJ Arch bankruptcy filing in March 2024, and obtained counsel two months following its October 2024 dismissal, from January 2025 through January 2026, just prior to this bankruptcy filing), or that Mr. Ostrow cannot (or is not obligated under the retention to), represent him there. Moreover, Simpson provides no authority for his argument that a present representation in one proceeding is relevant under these abstention doctrines. And of course, Simpson is free to move to lift the stay of the now-remanded *Great American* case to seek to obtain disputed insurance funds for his defense of the State Court Action.

Simpson's other arguments fare no better. He cannot and does not plead a specific performance claim to enforce the August 2023 Agreement. He cannot and does not meaningfully address judicial estoppel or collateral estoppel and fails to adequately explain how he has standing or how he can use a plenary adversary proceeding to adjudicate interim standing requirements under CPLR 6401 or to vacate state court receivership orders.

## ARGUMENT

### I. Simpson Ignores the Anti-Removal Injunction in his Opposition

In seeking abstention and dismissal, Chassen argued that the "Amended Complaint—which seeks to vacate the Receiver Orders entered in the State Court Action and to adjudicate ownership interests in certain JJ Arch Controlled Entities—is an improper end run around" the

3

anti-removal injunction and that "deference to the [][anti-removal injunction] is reason enough for the Court to abstain . . ." ECF No. 43 at 24. Last year, U.S. District Judge Furman enjoined Simpson from ever removing the State Court Action to federal court without the District Court's prior permission. *Simpson v Chassen*, 25-CV-04004 (JMF), 2025 WL 1784931, at *2 (S.D.N.Y. June 27, 2025). Judge Furman found that Simpson's "vexatious history of litigation," his "vexatious conduct in state court," his repeated "baseless attempts to remove this action to federal court," and his "repeated and frivolous efforts to delay state court proceedings," justified enjoining him from future removals of the State Court Action to federal court. *Id.* In opposition, Simpson does not even mention the Anti-Removal Injunction, let alone address it. By his silence he concedes Chassen's argument that the Court should abstain and dismiss this action because of it. *Scott v JPMorgan Chase & Co.*, 13 CIV. 646 KPF, 2014 WL 338753, at *10 (S.D.N.Y. Jan. 30, 2014) (party who fails to address argument in opposition concedes argument).

Moreover, after Chassen filed this Motion, U.S. District Judge Vargas expressly denied Simpson's motion seeking permission to remove the State Court Action to this Court and for relief from the Anti-Removal Injunction. *Simpson*, 2026 WL 1584643, at *2. Days later, Chassen sent this Court a letter attaching Judge Vargas's decision and explained how it further supported abstention and dismissal. ECF No. 44, June 4, 2026 Letter Informing Court of Subsequent Decision and Development.

Judge Vargas, of course, found that the State Court Action is subject to mandatory *and* permissive abstention. *Simpson*, 2026 WL 1584643, at *2. Further, in denying permission to remove, Judge Vargas expressly cited not only to Simpson's lengthy history of bad-faith forum shopping and frivolous efforts to delay the State Court Action but email correspondence just before this bankruptcy file where he expressly threatened to file this bankruptcy to "thwart state

4

court jurisdiction." *Id.* (citing *Simpson*, 25-CV-04004 (JAV), ECF 78-1, Simpson Jan. 24, 2026 Email) ("Once again, SHAME ON YOU JUDGE JOEL COHEN . . . If i must file for personal bankruptcy as a result to stop your absurdity, that i will do and your "unclean" hands will be investigated to the nth degree . . ."). In addition to this email, Judge Vargas was presented with an extensive record of Simpson's own correspondence evidencing his bad-faith intent. *Simpson*, ECF No. 78, Schwartz Decl.; *id.* at ECF No. 77, Memorandum of Law in Opposition. And just two days after Judge Vargas's decision, Simpson reaffirmed his forum shopping intent while under oath in this bankruptcy, telling the receiver's counsel in this very proceeding that the "State court is full of sh[*]t . . . That's why I filed bankruptcy, you moron." *See In re Simpson*, 26-10359-lgb (S.D.N.Y.), ECF No. 88-1, June 5, 2026 Simpson Dep. Tr. at 563:12-16.[2]

The continuing Anti-Removal Injunction reflects the *sui generis* nature of Simpson's unrelenting forum shopping campaign and is the ultimate abstention doctrine. Simpson not only is defying it, but he wholly ignores it in his opposition. This Court should not allow Simpson to subvert a federal Anti-Removal Injunction by way of an adversary proceeding that expressly seeks to collaterally attack state court orders in a proceeding he is enjoined by the federal court from bringing to this Court.

---

[2] Another Judge of this very Court (Mastando, J.) determined that a chapter 11 case Simpson filed was a bad faith filing filed for the purpose of forum shopping this very same State Court Action that Simpson seeks to collaterally attack through this adversary proceeding. *In re JJ Arch LLC.*, 24-10381 (JPM), 2024 WL 2933427, at *15-20 (Bankr. S.D.N.Y. June 10, 2024); *In re JJ Arch LLC*, 663 B.R. 258, 260 (Bankr. S.D.N.Y. 2024), *aff'd* 24-CV-08649 (JAV), 2026 WL 1622865 (S.D.N.Y. June 5, 2026) (Judge Vargas affirming Judge Mastando's dismissal of the JJ Arch bankruptcy on appeal).

**II.    The District Court Rejected Simpson's Argument that Justice Cohen's March 10, 2026 Court Notice Provides a Basis for Relief from the Anti-Removal Injunction**

In connection with *Colorado River* and *Wilton* abstention and his arguments regarding standing, Simpson cites a March 10, 2026 Court Notice from Justice Cohen in which Justice Cohen stated that "he was inclined to agree . . . that the stay applies to this case in entirety, and that the case at this point should be included in the federal proceedings" subject to contrary federal rulings. NYSCEF Doc. No. 2369. Simpson asserts therefore that "it does not make sense for this Court to abstain in favor of a court that has expressed its preference to defer to this Court." ECF No. 51 at 6. And he also asserts that the Court should entertain his application to vacate the state court's receivership orders because he claims, "[t]he state court has stayed its case and expressed a preference to defer all controversies related to the Debtor to this Court." *Id.* at 12.

Simpson made these very same arguments to the District Court in seeking permission to remove the State Court Action and the District Court found these arguments unavailing. *See Simpson*, 25-CV-04004, ECF No. 71 at 4, 8 (citing to Justice Cohen's Court Notice and claiming it was a changed circumstance warranting relief from the Anti-Removal Injunction); *see id.* at ECF No. 72 (attaching Justice Cohen's Court Notices); *id.* at ECF No. 82 at 2-3. In opposition to Simpson's motion, Chassen explained that the Court Notice was an act of comity to the federal courts that came "in the backdrop of Simpson's two years of unrelenting attacks on [][Justice Cohen], including baseless accusations that Justice Cohen 'hated bankruptcy' and that he would attempt to hold onto the case at all costs because of Simpson's threats that he would have Justice Cohen investigated in Bankruptcy Court." *Id.* at ECF No. 77 at 21-22. Further, Justice Cohen's stay was expressly subject to federal rulings on the automatic stay and his opinion on where the

State Court Action should proceed was not only made without adversarial briefing on issues such as the Anti-Removal Injunction and mandatory and permissive abstention, but it "was not a legal determination as to whether removal is proper, something only a federal court can determine." *Id.*

In other words, Judge Vargas denied permission to remove (and found that the State Court Action is subject to mandatory and permissive abstention) *notwithstanding* Justice Cohen's March 2026 Court Notice and advisory statement there that he was "inclined to agree . . . that this case at this point should be included in the federal proceedings so that it can move forward." *Id.* at ECF 72-3. Judge Vargas found that with this record, to reward Simpson by allowing him to remove the State Court Action would "make a mockery of the Court." *Simpson*, 2026 WL 1584643, at *2; *See also Simpson*, 25-CV-04004 (JAV), ECF No. 78, Schwartz Decl.; *id.* at ECF No. 77, Memorandum of Law in Support.

### III.   *Colorado River* Abstention Supports Dismissal

Though the federal Anti-Removal Injunction requires both abstention and dismissal (and is itself underpinned by a June 3, 2026 ruling that mandatory and permissive abstention apply in connection to the State Court Action), other abstention doctrines also apply, including *Colorado River* and *Wilton*. *Colorado River* abstention can apply in bankruptcy proceedings. *In re Community Mgt. Corp. of Maryland*, 91 Fed Appx 808, 810 (4th Cir. 2003); *In re Telluride Glob. Dev., LLC*, 380 B.R. 585, 593 (10th Cir. BAP 2007).

As to the first factor, the state court assumed control over the res (1640 Montauk and 1640 Motors) in appointing the receivership over those entities. And while Simpson points to the Court Notice where Justice Cohen stated that "he was inclined to agree . . .  that the stay applies to this case in entirety, and that the case at this point should be included in the federal

proceedings . . ." ([NYSCEF Doc. No. 2369](#)) that statement predates Judge Vargas' decision affirmatively barring the removal of the State Court Action to this Court. Moreover, that statement does not obviate the fact that the receivership of 1640 Motors and 1640 Montauk—the res—is simply not before this Court.

As to the second factor, this Court is inconvenient relative to the state court, as the state court has handled the State Court Action since its inception, all the issues relate to state law, and the receiver was appointed under state law and CPLR procedures that it would be inconvenient—indeed impossible—to litigate over in federal court. As to the third factor, dismissing this action will avoid piecemeal litigation. This action seeks to collaterally challenge orders entered in the State Court Action, and deferring to the State Court Action prevents the multiplication of adversary proceedings seeking to challenge or address portions of the State Court Action in favor of the single action and forum in the State Court Action.

Moreover, Simpson is the plaintiff in the State Court Action and the law is clear that he is not automatically stayed by the filing of his own bankruptcy from pursuing his claims in state court. *In re Jandous Electric Constr.*, 106 B.R. 48, 50 (Bankr. S.D.N.Y. 1989). Further, Simpson's claims in this proceeding seek to vacate a receivership over corporate assets to which his automatic stay does not extend. *Queenie, Ltd v. Nygard Intl.*, 321 F.3d 282, 287 (2d Cir. 2003). And while Justice Cohen acceded to Simpson's request to extend the stay to the entire action (subject to a contrary ruling about the scope of any stay from this Court), Simpson is free to ask Justice Cohen to limit the stay to allow him to seek vacatur of the receivership. Or Simpson can seek relief from this Court since Justice Cohen expressly ruled that he would defer to this Court as to the scope of the stay. And of course, Chassen now has a pending motion to lift the automatic stay as to all his claims and defenses in the State Court Action, all matters relating

8

to the receivership, and any civil or criminal contempt claims of the state court's orders against Simpson. *See In re Simpson*, 26-10359-lgb (S.D.N.Y.) at ECF Nos. 87-89. Simpson is free to accede in whole or in part to the lifting of the automatic stay so that he can seek to vacate the receivership in state court based on the August 2023 Agreement.

As to the fourth factor, the State Court Action was filed three years before this action, and is far advanced, with a trial that was scheduled for July 2026 prior to this bankruptcy. As to the fifth factor, federal law is inapplicable to the claims seeking to vacate the state court receiver.

And as to the sixth factor, the state procedures are adequate to protect the federal plaintiff. While Simpson argues that his retention with Mr. Ostrow does not extend to state court litigation, that is not a state court procedure. Moreover, it is far from clear that Mr. Ostrow's retention does not extend to the State Court Action even if litigated in state court, as Simpson has certainly contended that it is related to his Chapter 11 case. Nor is it clear that Mr. Ostrow would decline such representation if Simpson sought its extension. Moreover, even if retention of counsel was a "state court procedure," there is no evidence that Mr. Simpson is unable to retain counsel as he retained Mr. Ostrow (and many others before him), and the record shows that for almost all of 2025 he was represented by counsel in the State Court Action. Only just before the bankruptcy filing did his counsel seek to withdraw, and even then that counsel remained as counsel for JJ Arch. NYSCEF Doc. No. 1038, Jan 5, 2025 Notice of Appearance; NYSCEF Doc. No. 1479, May 5, 2025 Notice of Appearance; NYSCEF Doc. No. 2347, Feb. 11, 2026 Interim Decision and Order on Motion. Finally, Simpson is free to seek to lift the stay to pursue the remanded interpleader action in state court. *Great American Insurance Company*, 1:26-04833-JAV, ECF No. 5, Order Adopting Findings of Fact and Conclusions of Law.

## IV. *Wilton* Abstention Supports Dismissal

*Wilton* abstention also applies in bankruptcy proceedings. *In re SVB Fin. Group*, 671 B.R. 351, 372 (Bankr. S.D.N.Y. 2025)(applying *Wilton* abstention). Simpson argues that his third cause of action seeking a declaratory judgment that Chassen has no standing to seek the receiver does not underpin his fourth cause of action seeking to terminate the receiver. But any reading of the Amended Complaint makes clear that the third claim is the lynchpin on which the fourth claim rests. There is no pleaded basis for vacating the receiver (count 4) other than the declaration Simpson seeks that Chassen lacked standing to seek it in the first place because of the August 2023 Agreement (count 3).

Simpson also contends that a debtor in possession is akin to a trustee and that if a trustee could remove without bad-faith then it is not bad-faith when Simpson does it. This argument wholly misstates the law and was rejected by Judge Vargas.

First, as Chassen explained in his opposition before Judge Vargas, a court-appointed trustee is wholly distinct from a debtor in possession, who cannot be expected to act against his own *perceived* self-interest. *Simpson*, 25-CV-04004 (JAV), ECF No. 77 at 19-21. A debtor-in-possession is also the same person they were before they filed bankruptcy. *Id.*

Second, that an independent trustee or someone else might take an action without having a bad faith intent has no relevance to Simpson and his intent in taking that same action. This is because "[a] determination that a party is forum shopping turns on issues of that party's intent . . ." *Vivendi SA v T-Mobile USA Inc.*, 586 F.3d 689, 695 (9th Cir. 2009).[3] Bad-faith forum

---

[3] *See also Cohen v Am. Airlines, Inc.*, 13 F4th 240, 247 (2d Cir. 2021) ("The district court did not abuse its discretion in ruling that the new allegation was included solely to avoid the Montreal Convention's two-year statute of limitations, and thus was made in bad faith."); *McGee v State Farm Mut. Auto. Ins. Co.*, 684 F Supp 2d 258, 264 (E.D.N.Y. 2009) (court may infer forum shopping intent from timing of filings); *Miller v Calotychos*, 303 F. Supp. 2d 420, 429-30 (S.D.N.Y. 2004) (court looks to parties' motivation).

shopping intent is dependent on actual motive and intent even when there could be a conceivable good faith reason for the conduct. *Nazario v Deere & Co.*, 295 F Supp 2d 360, 364 (S.D.N.Y. 2003) ("Plaintiff argues he is pursuing joinder so that all of his claims can be adjudicated in one action. While this would be a permissible motive, a principal desire to destroy federal diversity jurisdiction is an impermissible motive.").[4]

Simpson points to another proceeding that he removed that this Court recommended be remanded on mandatory abstention grounds. *Great American Insurance Company v. Arch Real Estate Holdings*, Case No. 26-01015 (LGB) (Bankr. S.D.N.Y.). He says that this Court found Simpson's removal of that case was not an improper act of forum shopping. But as the District Court (Vargas, J.) found in adopting the Court's findings of fact and conclusions of law, such statements were not holdings, "but characterizations made at a hearing in this matter," and "not proposed findings of fact or conclusions of law submitted to the district court." *Great American Insurance Company*, 1:26-04833-JAV, ECF No. 5, Order Adopting Findings of Fact and Conclusions of Law. Further, the Court there did not reach the issue of permissive abstention and Simpson's intent in removal was not necessary to the Court's ruling on mandatory abstention. Finally, any finding as of Simpson's intent is inapposite to such intent with respect to the State Court Action, which is the subject of multiple federal decisions finding repeated bad-faith, and the Anti-Removal Injunction.

## V.     *Rooker-Feldman* Supports Abstention

Simpson contends that Rooker-Feldman always requires a concluded proceeding. ECF No. 50 at 7-8. That is not the law. Simpson ignores the numerous courts that have found that

---

[4] Of course, it is highly unlikely that an independent trustee would remove a case that is subject to mandatory and permissive abstention and which was set for resolution shortly in favor of starting from scratch.

*Rooker-Feldman* applies to interim orders when they were or could have been appealed. *See* ECF No. 42 at 12-13 (citing cases). Moreover, the fact that a court that entered an order can always revisit an order does not change the analysis since parties are always able to seek to vacate orders and judgments even after a proceeding is concluded. *See* CPLR 5015 (allowing parties to move to vacate judgments even after proceedings have concluded); *See* Fed. R. Civ. P 60 (allowing parties to move to vacate judgments even after proceedings have concluded).

Simpson argues that the Court's ruling on his preliminary injunction motion and stay motion is law of the case with respect to *Rooker-Feldman*. ECF No. 50 at 2, 7-8. It is true that "a court will not ordinarily reconsider its own prior decisions, although it retains the discretion to do so." *In re Hagerstown Fiber Ltd. Partnership*, 277 B.R. 181, 203 (Bankr. S.D.N.Y. 2002) (citations omitted). But the Court denied Simpson's motion seeking to enjoin the receivership. Moreover, even to the extent the Court granted his motion such a ruling is not law of the case as to Simpson's claims in the Amended Complaint or this motion seeking its dismissal. *Id.* at 204 (law of the case did not apply because "[s]tay relief motions give a bankruptcy court considerable discretion . . ."); *Hodnett v Medalist Partners Opportunity Master Fund II-a, L.P.*, 1:21-CV-00038-MKV, 2021 WL 535485, at *4 (S.D.N.Y. Feb. 12, 2021) (preliminary injunction motions are not law of the case).

## VI. Simpson's Failure to Plead a Specific Performance Claim is Fatal and He Cannot Obtain Leave to Replead

Simpson's failure to plead a specific performance claim is fatal to his claims seeking to collaterally attack the receiver. Simpson cannot seek to vacate a receivership premised on a contract he has never in three years sought to specifically enforce. This is not a matter of an inconsistent claim or pleading in the alternative, but rather the absence of a claim for specific

12

enforcement of the contract he relies upon to argue Chassen must transfer his interests and which rendered Chassen without standing to seek a receiver.

Moreover, while Simpson asks for leave to replead a third time—apparently to insert a claim for specific performance of the August 2023 Contract—he does not even attempt to explain how any such claim could be anything other than futile. ECF No. 43 at 30-33 (explaining that Simpson's assertion of a specific performance claim would be futile because Simpson disavowed the contract, because performance is no longer possible, and because Simpson cannot plausibly allege, among other things, that he is ready, willing, and able to close on the contract by obtaining the bank loan or paying Chassen $675,938.35). "[A] futile request to replead should be denied." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Moreover, the Court should take judicial notice of Simpson's most recent testimony in this proceeding after Chassen filed this motion, where Simpson again affirmed that he is not ready or willing to perform the terms of the contract, and that he considers the contract to be void. *See In re Simpson*, 26-10359-lgb (S.D.N.Y.), ECF 88-1, June 5, 2026 Simpson Dep. Tr. at 93:17-110:22; 198:15-217:15. This comes on top of Simpson's repeated judicial admissions before he brought this adversary proceeding. ECF No. 43 at 38-40 (detailing admissions).

## VII. Simpson Concedes that He Lacks Standing to Pursue Claims on Behalf of YJ Simco LLC and 1640 Motors LLC and that He Fails to Plausibly Allege his Sixth Claim

Simpson also contends that he has standing to seek to vacate the receivership under the August 2023 Agreement because he "personally suffered injury from the receivership, including being personally barred from the premises, being personally compelled to perform certain acts and being subjected to civil and criminal contempt proceedings for failing to obey court orders." ECF No. 51 at 11. Simpson's gripes about the receivership do not confer standing to assert a

claim to vacate the receivership based on an argument that Chassen lacked standing under the August 2023 Contract. Simpson does not dispute that under the August 2023 Agreement it is YJ Simco that was to obtain JJ Arch's membership interests in 1640 Motors and 1640 Montauk, not Simpson.

Moreover, Simpson's contention that he has standing to seek to recover the 3 vehicles listed on Schedule A of the August 2023 Agreement by virtue of that agreement also fails. Simpson nowhere alleges in the Amended Complaint that these 3 vehicles belonged to him. Moreover, the language of the August 2023 Agreement does not state that these vehicles belonged to Simpson, but merely obligated Simpson to cause the vehicles to be conveyed to Chassen. And the Court should take judicial notice that Simpson has conceded that at least one of the vehicles on the Schedule A belonged to Chassen and he transferred it to Chassen months before the August 2023 Agreement. *See In re Simpson*, 26-10359-lgb (S.D.N.Y.), ECF 88-1, June 5, 2026 Simpson Dep. Tr. at 248:13-254:2.

And even to the extent that Simpson might have standing with respect to the vehicles listed in Schedule A, Simpson's claims for recission or unjust enrichment in Count Six fails to state a claim for the reasons detailed in the Motion. ECF No. 43 at 36-37. Simpson does not address these arguments, and by his silence concedes them. *Scott*, 13 CIV. 646 KPF, 2014 WL 338753, at *10 (party who fails to address argument in opposition concedes it).

## VIII. Simpson Has No Viable Response to Collateral Estoppel and Judicial Estoppel

Simpson briefly argues that under New York law, the state court's receivership orders are not subject to collateral estoppel and can be freely attacked here. That is not so. *People v Abbott Manor Nursing Home*, 112 A.D.2d 40 (4th Dep't 1985) (holding that state was precluded from

challenging the appointment of receiver in a later proceeding once appointment was determined in a prior proceeding).

Moreover, Simpson cites to a U.S Supreme Court decision to argue that judicial estoppel should not apply because it "is an equitable doctrine that requires the consideration of all relevant facts and circumstances, including whether a prior litigation position was the result of mistake or inadvertence." ECF No. 51 at 13. Simpson does not explain how his prior positions with respect to the August 2023 Agreement was the result of mistake or inadvertence, or why the relevant facts and circumstances do not support the application of judicial estoppel.

IX.    **Simpson Does Not Explain How the Court Can Vacate Interim State Court Orders Relating to Non-Debtor Assets in Plenary Adversary Proceedings**

In his opposition, Simpson provides no authority supporting the notion that he can use a plenary adversary proceeding to vacate receivership orders entered in the pending State Court Action that is not before the Court, let alone that he can do so based on claims relating to an August 2023 Agreement that he disclaimed.[5] Other than Simpson's *ipse dixit*, he provides no support that this Court can vacate interim relief entered in other proceedings, or that plenary adversary proceedings can be used to vacate interim relief entered during the pendency of other proceedings.[6]

<u>**CONCLUSION**</u>

For the foregoing reasons, the reasons detailed in Chassen's moving papers, and any papers submitted by the Receiver, the Court should grant this motion in its entirety.

---

[5] Chassen explained that under CPLR 6401 his "standing to seek a receiver was, and is, not dependent on what ultimately happens in a plenary action . . ." ECF No. 43 at 34-35. Rather, it is a form of relief that a state court may order during the pendency of an action. *Id.*

[6] Simpson provides no support for the notion that CPLR 6415 allows other courts to remove a receiver appointed in an action pursuant to the CPLR.

Dated: June 29, 2026

<div style="margin-left:50%">

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
By: /s/ Sean C. Southard
Sean C. Southard
200 West 41st Street, 17th Floor
New York, New York 10036
ssouthard@klestadt.com

-and-

SCHWARTZ LAW PLLC
By: /s/ Allen Schwartz
Allen Schwartz, Esq.
150 Broadway, Suite 701
New York, New York 10038
347-460-5379
allen@allenschwartzlaw.com

*Counsel for Jared Chassen*

</div>