FARRELL FRITZ, P.C.
Martin G. Bunin
622 Third Avenue, Suite 37200
New York, NY 10017
Telephone: (212) 687-1230

*Counsel for Defendant Eric M. Huebscher, not individually*
*but solely in his capacity as Receiver*

**UNITED STATES BANKRUPTCPY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| JEFFREY SOLOMON SIMPSON, | : | Case No. 26-10359 (LGB) |
| | : | |
| Debtor | : | |

---------------------------------------------------------------------X

| | | |
|---|---|---|
| JEFFREY SOLOMON SIMPSON, as Debtor and Debtor in Possession, | : | |
| | : | Adv. Pro. No. 26-01013 (LGB) |
| Plaintiff, | : | |
| | : | |
| -against- | : | |
| | : | |
| ERIC HUEBSCHER, as Receiver of Certain Assets of JJ Arch, and JARED CHASSEN, | : | |
| | : | |
| Defendants. | : | |

---------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW OF RECEIVER**
**IN FURTHER SUPPORT OF MOTION TO**
**DISMISS COUNTS II-VI OF AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

Pages (s)

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ........................................................................................................... 2

POINT I .................................................................................................................. 2

THE BARTON DOCTRINE BARS COUNTS III THROUGH V AND
THE DEBTOR'S OPPOSITION FAILS TO DEMONSTRATE OTHERWISE ..................... 2

    A.    That Certain Provisions of the Bankruptcy Code are Enforceable against
State Court Receivers Does Not render the Barton Doctrine a Nullity ..................... 2

    B.    28 U.S.C. § 959 (a) Does Not Permit Suits Without Leave of Court Over
Administration of the Receivership ........................................................... 4

    C.    The Receiver Did Not Waive Barton Doctrine Protection by Commencing a
Separate Adversary Proceeding ............................................................... 5

    D.    The Barton Doctrine is not Limited to Actions Seeking Personal Liability ............... 7

POINT II ............................................................................................................... 8

THE ROOKER-FELDMAN DOCTRINE INDEPENDENTLY BARS THE
NEW CLAIMS ....................................................................................................... 8

POINT III ............................................................................................................. 10

COUNTS II AND VI FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE
GRANTED ........................................................................................................... 10

    A.    Count II Fails to State a Claim Because the Automatic Stay Does Not Extend
to Non-Debtor Property ......................................................................... 10

    B.    Count VI Does Not State a Claim Against the Receiver ........................................ 11

CONCLUSION ...................................................................................................... 12

<u>**TABLE OF AUTHORITIES**</u>

Page(s)

Cases

*Barton v. Barbour*,
    104 U.S. 126 (1881)..................................................................................................... 3

*Cassini v. County of Nassau*, 22-CV-0,
    1696, 2024 WL 3823205 (E.D.N.Y. Aug. 12, 2024)........................................... 8, 9

*Charles v. Levitt*,
    716 Fed.Appx 18 (2d Cir. 2017)................................................................................ 9

*Dorce v. City of New York*,
    2 F.4th 82 (2d Cir. 2021) ......................................................................................... 10

*Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*,
    410 F.3d 17 (1st Cir. 2005)....................................................................................... 9

*Gardner v. New Jersey*,
    329 U.S. 565 (1947)................................................................................................... 7

*In re Fogarty*,
    39 F.4th 62 (2d Cir. 2022) ...................................................................................... 11

*In re Lehal Realty Assocs.*,
    101 F.3d 272 (2d Cir. 1996) ..................................................................................... 5

*McIntire v. China Media Express Holdings, Inc.*,
    113 F.Supp.3d 769 (S.D.N.Y. 2015)................................................................. passim

*Phillips ex rel Green v. City of New York*,
    453 F.Supp.2d 690 (S.D.N.Y. 2006)......................................................................... 9

*Picard v. Fairfield Greenwich Ltd.*,
    762 F.3d 199 (2d Cir. 2014)..................................................................................... 11

*Queenie, Ltd. v. Nygard Intl.*,
    321 F.3d 282 (2d Cir. 2003)..................................................................................... 11

*Sec. Investor Prot. Corp. v Bernard L. Madoff Inv. Sec. LLC*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011)...................................................................... 8

*T.M. v University of Maryland Medical System Corporation*,
608 U.S. ____, ___ S.Ct. ____, 2026 WL 1751823 ................................................................ 10

*Vass v. Conron Bros.*,
59 F.2d 969 (2d Cir. 1932) ................................................................................................. 3

Statutes

11 U.S.C. § 101(11)(A) ................................................................................................. 3

28 U.S.C. § 959 (a) ................................................................................................. 1, 4, 5

28 U.S.C. § 1334(b) ................................................................................................. 2

Bankruptcy Code Section 362(a) ................................................................................................. 1, 3

Bankruptcy Code Section 523(a)(6) ................................................................................................. 6

Bankruptcy Code Section 543 ................................................................................................. 1, 3, 4

Defendant Eric M. Huebscher, not individually but solely in his capacity as court-appointed receiver (the "Receiver"), by his attorneys, Farrell Fritz, P.C., respectfully submits this reply memorandum of law in further support of his motion to dismiss (ECF No. 42) counts II-VI of the Amended Complaint[1] of plaintiff Jeffrey Solomon Simpson ("Debtor" or "Plaintiff") and in response to the Plaintiff's memorandum of law in opposition to the Receiver's motion to dismiss counts II-VI of the Amended Complaint (ECF No. 50, the "Opposition").

## PRELIMINARY STATEMENT

The Opposition confirms that counts III-V are precisely the type of claims the Barton Doctrine channels to the appointing court: a declaration that the party who sought the receivership lacked standing, termination of the receivership itself, and a court-ordered accounting of the Receiver's administration. These claims strike at the heart of the receivership and its supervision State Court presiding over the State Court Action.

The Debtor argues that application of the Barton Doctrine to prohibit him from suing the Receiver in this Court to terminate the receivership without leave of the State Court would be inconsistent with provisions of the Bankruptcy Code, such as the automatic stay under Section 362(a) and the requirement under Section 543 for custodians to account for and turnover estate property, that are enforceable against receivers. However, it is well-settled that the Barton Doctrine applies in bankruptcy cases notwithstanding these provisions enforceable against state court receivers.

The Debtor's attempts to evade the Barton Doctrine through reliance on 28 USC § 959(a) fail because the Receiver never operated the business of any of the entities and properties over which he was granted control and authority, including Rêver Motors. The Receiver has engaged

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Receiver's opening memorandum in support of his motion to dismiss.

only in the administration and liquidation of the assets of Rêver Motors, as well as the real property owned by the other receivership entities. And the claims asserted in Counts III-V do not even concern the manner in which the Receiver is carrying out his duties. Rather, the Debtor seeks to terminate the receivership altogether as having been erroneously instituted. Finally, the Debtor's theory that the Receiver "waived" the Barton Doctrine is asserted without any supporting authority and is in any event without merit.

For purposes of the *Rooker-Feldman* doctrine, the Receiver Order is a final judgment by the State Court against the Debtor that the Debtor is improperly asking this Court to review. That this Court declined to apply the *Rooker-Feldman* doctrine to Count I of the Amended Complaint does not comprise law of the case concerning applicability of the doctrine to the new claims asserted in the Amended Complaint.

Count II of the Amended Complaint fails to state a claim on which relief can be granted since the automatic stay does not extend to non-debtor property. Count VI of the Complaint should also be dismissed as to the Receiver since it does not seek any relief against the Receiver, only against Chassen.

## ARGUMENT

### POINT I
### THE BARTON DOCTRINE BARS COUNTS III THROUGH V AND THE DEBTOR'S OPPOSITION FAILS TO DEMONSTRATE OTHERWISE

**A.     That Certain Provisions of the Bankruptcy Code are Enforceable against State Court Receivers does not render the Barton Doctrine a Nullity**

The Debtor argues that applying the Barton Doctrine to bar claims by an estate representative against a state court receiver would create an "uncodified exception" to 28 U.S.C. § 1334(b) and, if extended to state court receivers, would render the bankruptcy automatic stay and Section 543 of the Bankruptcy Code (concerning turnover of property by a custodian)

unenforceable in bankruptcy court against receivers (Opposition at 8). This argument is illogical and must be rejected.

If accepted, the Debtor's reasoning would effectively make the Barton Doctrine inapplicable in every case involving a court-appointed receiver, because any debtor could assert that requiring leave of the appointing court conflicts with the bankruptcy court's statutory authority. The case law is clear, however, that the Barton Doctrine applies to *all* suits against trustees and court-appointed receivers, not solely those arising in the bankruptcy context. *See McIntire v. China MediaExpress Holdings, Inc.*, 113 F.Supp.3d 769, 773 (S.D.N.Y. 2015) (the Barton Doctrine applies to "***all proceedings involving receivers*** – not bankruptcy alone") (emphasis added); *Barton v. Barbour*, 104 U.S. 126, 127 (1881); *Vass v. Conron Bros.*, 59 F.2d 969, 971 (2d Cir. 1932). The Debtor has not pointed to any instances of courts declining to enforce the Barton Doctrine because of perceived inconsistencies with Bankruptcy Code provisions.

The Debtor conflates distinct concepts. Bankruptcy Code Section 362(a) stays actions against the Debtor and his property and Section 543 governs the turnover obligations of a custodian (including a state court receiver, 11 U.S.C. § 101(11)(A) once a bankruptcy case is filed. The Barton Doctrine, by contrast, governs the *forum* in which claims challenging a receiver's actions or seeking to interfere with the receivership may be heard. These are independent legal principles that coexist without conflict. A bankruptcy court's authority to enforce the automatic stay or order turnover under Section 543 in no way requires that *any* court be permitted to entertain claims seeking to terminate a receivership, challenge the standing of the party who sought its creation, or compel the receiver to render an accounting, all without leave of the appointing court.

Importantly, none of the Debtor's new claims in the Amended Complaint seek a turnover under Section 543 or enforcement of the automatic stay. Count III seeks a declaration that Chassen

lacked standing to seek the receivership; Count IV seeks termination of the receivership itself; and Count V seeks a court-ordered accounting. These claims do not invoke the automatic stay or Section 543 and have nothing to do with custodial turnover. They are frontal attacks on the receivership, precisely the claims that the Barton Doctrine requires to be adjudicated by the appointing court.

Whereas the allegations and relief sought in Counts III through V go to the heart of the State Court Action and the receivership, Counts I and II, on the other hand, are not barred by the Barton Doctrine since they address the automatic stay, seeking relief that a bankruptcy court is uniquely positioned to grant or deny. And, despite the two State Court orders authorizing the auction of the assets of Rêver Motors, the Debtor asserts that the Receiver exceeded his authority by seeking to sell assets that belong to the Debtor.

B.      **28 U.S.C. § 959 (a) Does Not Permit Suits Without Leave of Court Over Administration of the Receivership**

The Debtor next contends that, even if the Barton Doctrine applies, the "business" exception codified at 28 U.S.C. § 959 (a) permits suit against the Receiver without leave because the Receiver Order authorized him to "manage, rent, lease, sell, or develop the JJ Arch Controlled Properties" (Opposition at 9). This argument misapprehends the scope of the exception.

As the Receiver demonstrated in his opening memorandum, Section 959(a)'s business exception is narrow: it "applies only to acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise." *McIntire,* 113 F.Supp.3d at 773. The exception "is not intended to permit actions against a receiver in a non-receivership forum for alleged misconduct in the administration of receivership property" (*id.*). The Second Circuit has held that "[28 U.S.C.] Section 959 does not apply where . . . a trustee acting in his official capacity conducts no business connected with the property other than to

4

perform administrative tasks necessarily incident to the consolidation, preservations, and liquidation of assets in the debtor's estate." *In re Lehal Realty Assocs.*, 101 F.3d 272, 276 (2d Cir. 1996).

Since the Receiver never operated the Rêver Motors business in which the Debtor has an interest (*see* Declaration of Eric M. Huebscher, in his Capacity as Receiver, in Opposition to Plaintiff's Motion for Injunctive Relief, ECF No. 12-1, ¶¶ 5 and 15), Section 959(a) has no application here. And, importantly, the Debtor does not allege in the Amended Complaint that the Receiver ever operated the Rêver Motors business.

In any event, the Debtor's argument ignores the nature of the claims actually asserted in the Amended Complaint. Even assuming, for the sake of argument only, that the Receiver could conceivably be characterized as "carrying on business" of the Debtor, the claims at issue do not arise from any conduct of that business. Count III challenges Chassen's standing to seek the receivership in the first place—a matter unrelated to any "act[] or transaction[] in carrying on business." Count IV seeks to terminate the receivership entirely. Count V demands an accounting of the Receiver's administration. None of these claims arises from the Receiver's operation of a business; they are challenges directed squarely at the existence and supervision of the receivership itself. Section 959(a) does not provide an avenue to circumvent the Barton Doctrine for claims to attack the establishment and continued existence of the receivership. *See In re Lehal Realty Assocs.*, 101 F.3d at 276; *McIntire*, 113 F.Supp.3d at 773.

### C. The Receiver Did Not Waive Barton Doctrine Protection by Commencing a Separate Adversary Proceeding

The Debtor argues that the Receiver "waived" any Barton Doctrine protection by commencing an adversary proceeding against the Debtor in this Court (Opposition at 10). According to the Debtor, the Receiver "cannot institute bankruptcy court litigation and then claim Barton Doctrine

immunity from bankruptcy court litigation" (*id.*). This argument is improper.

The Barton Doctrine is a rule of subject matter jurisdiction, not a privilege or right that can be waived by litigation conduct. *See McIntire,* 113 F.Supp.3d at 774 (describing the Barton Doctrine as "jurisdictional in nature")[2]. The filing of a separate adversary proceeding on an unrelated claim does not constitute consent to be sued on wholly different claims in an action the Debtor initiated. The Debtor cites no authority holding that a receiver's filing of a claim in bankruptcy court constitutes blanket consent to any and all litigation against the receiver in that forum.

Separate and apart from the inability of the Receiver to waive Barton Doctrine protection, the adversary proceeding commenced by the Receiver against the Debtor is to determine the dischargeability of debts under Bankruptcy Code Section 523(a)(6) arising from the motion of the Receiver and Chassen in the State Court Action to hold the Debtor in civil and criminal contempt. Only this Court may determine the dischargeability of a debt under Section 523(a)(6); such relief is uniquely a bankruptcy court function. The Receiver did not make a strategic choice to file his non-dischargeability complaint. A determination of non-dischargeability of any fines, damages or attorney's fees awarded by the State Court on the contempt motion can only be made by this Court. As a result, even if the Barton Doctrine could be waived, the Receiver made no knowing relinquishment of a right by filing the non-dischargeability adversary proceeding, He did what he needed to do to preserve his ability to collect from the Debtor contempt fines, damages and attorney's fees that may be awarded on the contempt motion, and nothing more.

Moreover, the Debtor's analogy to sovereign immunity waiver (*see* Opposition at 10, citing *Gardner v. New Jersey,* 329 U.S. 565 (1947) is inapt. The Barton Doctrine is not a form of sovereign immunity; it is a forum-allocation rule that protects the appointing court's supervisory

---

[2] *See* Memorandum of Law of Receiver in Support of Motion to Dismiss Counts II-VI of Amended Complaint (ECF No. 42-1, at 6 fn, 3).

jurisdiction over its appointed officer. The Receiver's non-dischargeability action against the Debtor, which arises from the Debtor's contempt of state court orders, has no logical connection to the Debtor's claims seeking to challenge Chassen's standing, terminating the receivership, or compel an accounting.

In contrast to the non-dischargeability complaint addressing fines, damages and attorney's fees that may be awarded as the result of the granting of the contempt motion, the claims asserted in Counts III, IV, and V of the Amended Complaint—challenging the standing of Chassen to seek the receivership, terminating the receivership, and compelling an accounting—are claims that any court could entertain, but *only after leave of the appointing court* under the Barton Doctrine. The Debtor never sought or obtained such leave from the State Court. The Receiver's filing of an adversary proceeding to determine non-dischargeability, a matter uniquely within bankruptcy jurisdiction, does not excuse the Debtor's failure to comply with the Barton Doctrine's requirements as to the remaining claims. The Barton Doctrine remains applicable to Counts III, IV and V of the Amended Complaint.

### D. The Barton Doctrine is not Limited to Actions Seeking Personal Liability

The Debtor argues that the Barton Doctrine should be "limited to its purpose, as set forth by the Supreme Court, avoiding the imposition of personal liability" and that no count in the Amended Complaint seeks personal liability against the Receiver (Opposition at 11). This argument ignores decades of case law extending the Barton Doctrine beyond suits for damages.

As demonstrated in the Receiver's opening memorandum, the Barton Doctrine is not limited to suits seeking damages against a receiver. *McIntire*, 113 F.Supp.3d at 773. In *McIntire*, the court applied the doctrine to an action for declaratory relief. In *Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Securities, LLC*, the court applied the Barton Doctrine to bar a

7

declaratory judgment action. *Sec. Investor Prot. Corp. v Bernard L. Madoff Inv. Sec. LLC*, 460 B.R. 106, 116 (Bankr. S.D.N.Y. 2011). Indeed, the relief sought here, terminating the receivership and ordering the Receiver to pay moneys into this Court, is far more intrusive than a simple damages action, and the need for the appointing court's gatekeeping role is correspondingly greater.

## POINT II

## THE ROOKER-FELDMAN DOCTRINE
## <u>INDEPENDENTLY BARS THE NEW CLAIMS</u>

The Debtor argues that *Rooker-Feldman* does not apply because (1) there is no final state court judgment, (2) this Court has already ruled that the doctrine is inapplicable, and (3) that ruling is the "law of the case" (Opposition at 11-13). Each argument fails.

First, as the Receiver demonstrated in his opening memorandum, the *Rooker-Feldman* doctrine is not limited to final judgments entered at the conclusion of an entire state court action. Rather, the doctrine applies once "the state courts finally resolve[s] the issue that the federal court plaintiff seeks to relitigate in a federal forum." *Cassini v. County of Nassau*, 22-CV-01696, 2024 WL 3823205, at \*15 (E.D.N.Y. Aug. 12, 2024). In *Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, the First Circuit Court held that *Rooker-Feldman* barred a federal suit challenging an interlocutory state appellate ruling that resolved the federal preemption issue, notwithstanding that further proceedings remained pending before the Puerto Rico Labor Relations Board. *Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 24-26 (1st Cir. 2005). The First Circuit Court explained that state proceedings have "ended" for *Rooker-Feldman* purposes when the relevant issue has been finally resolved, even if the larger state proceeding remains ongoing (*id.*, at 25-26). Similarly, in *Phillips ex rel Green v. City of New York*, the Southern District of New York applied *Rooker-*

*Feldman* to a Family Court removal order entered pending further proceedings, holding that the issue the plaintiffs sought to relitigate, i.e. the propriety of the initial removal, had already been resolved and was not open to collateral attack in federal court. *Phillips ex rel Green v. City of New York*, 453 F.Supp.2d 690, 714-15 (S.D.N.Y. 2006). Finally, in *Cassini*, the Eastern District of New York applied the same principle to Surrogate's Court orders arising from an ongoing estate proceeding, including orders concerning a receivership, contempt, arrest, possession, and sale of property, because the plaintiff had appealed and lost or failed to appeal before the time do so expired. *Cassini*, 2024 WL 3823205, at \*15-17.

That is precisely the case here. The State Court entered the Receiver Order and the Enforcement Order, and the Debtor failed to appeal either within the time permitted. Those orders are final for purposes of *Rooker-Feldman* because the time to appeal has expired. *See Cassini*, 2024 WL 3823205, at \*16-17 (holding that where a party "appealed and lost, or failed to appeal before the time for doing so had expired," the state proceedings had ended as to the relevant issues); *Charles v. Levitt*, 716 Fed.Appx 18, 22 (2d Cir. 2017) (*Rooker-Feldman* properly applied where the complaint "singular[ly] focus[ed]" on allegedly wrongful actions related to the state court's imposition and execution of the property's receivership). The Debtor therefore cannot avoid *Rooker-Feldman* simply by asserting that the broader State Court action has not proceeded to a final judgment.

Second, the Debtor's "law of the case" argument is misplaced. This Court's prior ruling addressed Count I of the original complaint, enforcement of the automatic stay as to specific items of personal property. The new claims in the Amended Complaint are fundamentally different: they seek to vacate the Receiver Order, terminate the receivership, and compel an accounting. The

Court's prior determination that *Rooker-Feldman* did not bar Count I, a narrow automatic stay enforcement action, does not constitute a ruling that *Rooker-Feldman* should not apply to subsequent claims added by amendment that directly attack the state court receivership orders themselves.

Third, the fact that the State Court action has been stayed and that Justice Cohen expressed a view that the related proceedings "should be included in the federal proceedings" does not defeat *Rooker-Feldman*. Justice Cohen's view pertained to the proceedings going forward; it did not retroactively grant the Debtor permission to relitigate state court orders that he never appealed. The *Rooker-Feldman* bars a federal plaintiff from using a district court action to undo prior state-court orders where the alleged injury was caused by those orders and the requested relief would require review and rejection of them. *See Dorce v. City of New York*, 2 F.4th 82, 101-104 (2d Cir. 2021).[3]

**POINT III**

**COUNTS II AND VI FAIL TO STATE A CLAIM**
**FOR WHICH RELIEF CAN BE GRANTED**

**A.      Count II Fails to State a Claim Because the Automatic Stay Does Not Extend to Non-Debtor Property**

The Debtor argues that Count II satisfies the *Iqbal-Twombly* standard by pleading injury from the alleged shutdown of Rêver Motors and the resulting loss of grandfathered nonconforming use (Opposition at 14). The Debtor further contends that the denial of preliminary injunctive relief does not bar proceeding on the merits (*id.* at 14-15). Neither argument salvages Count II.

As set forth in the Receiver's opening memorandum (at 15) and agreed by the Debtor, the assets of 1640 Montauk LLC and Rêver Motors do not belong to the Debtor or his bankruptcy

---

[3] The U.S. Supreme Court very recently revisited the *Rooker-Feldman* doctrine in *T.M. v University of Maryland Medical System Corporation*, 608 U.S. ____, ___ S.Ct. ____, 2026 WL 1751823, decided on June 18, 2026. The Court held that its decision "neither expands not constrains *Rooker-Feldman*" Id. at 11.

estate. The Debtor is a member of JJ Arch LLC, which in turn is the sole member of those entities. The automatic stay protects the debtor and property of the debtor's estate; it does not extend to non-debtor property absent a showing of "immediate adverse economic consequence" to the debtor's estate occurring "by operation of law." *See Queenie, Ltd. v. Nygard Intl.*, 321 F.3d 282, 287 (2d Cir. 2003); *In re Fogarty*, 39 F.4th 62, 75 (2d Cir. 2022).

The Debtor's alleged chain of causation, that the shutdown of Rêver Motors threatens the loss of a grandfathered nonconforming use, which decreases property value, which increases his guaranty liability, is precisely the type of speculative, factually-contingent harm that is insufficient as a matter of law. The Second Circuit requires that the adverse impact "occur[] by operation of law" rather than being merely "factually likely" (*Fogarty*, 39 F.4th at 75, quoting *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 208 (2d Cir. 2014). The Debtor's alleged injury is entirely contingent on a future property sale at a deficit, a speculative harm, not an immediate adverse consequence by operation of law. Count II thus fails to state a claim.

The Debtor's observation that denial of a preliminary injunction does not preclude proceeding on the merits is correct as a general proposition, but it does not rescue a complaint that fails to plead facts satisfying the legal standard for extending the automatic stay to non-debtor property.

### B. Count VI Does Not State a Claim Against the Receiver

The Debtor contends that Count VI should not be dismissed against the Receiver because "there is no requirement that every count in a complaint be asserted against every defendant" (Opposition at 14). That proposition, while unremarkable, does not help the Debtor. The Receiver's motion to dismiss Count VI is based on the straightforward ground that Count VI seeks relief only against Chassen, not against the Receiver. Where a claim seeks no relief against a

particular defendant, it fails to state a claim against that defendant upon which relief can be granted. The Debtor has identified no relief sought in Count VI that runs against the Receiver, and accordingly Count VI should be dismissed as against the Receiver.

**CONCLUSION**

For the foregoing reasons, and for the reasons set forth in the Receiver's opening memorandum of law, the Receiver respectfully requests that the Court grant his motion and enter an order (1) dismissing Counts III, IV, and V of the Amended Complaint for lack of subject matter jurisdiction under the Barton Doctrine and the *Rooker-Feldman* doctrine; (2) dismissing Count II for failure to state a claim upon which relief can be granted; (3) dismissing Count VI as against the Receiver for failure to state a claim upon which relief can be granted; and (4) granting such other and further relief as this Court deems just and proper.

Dated: June 29, 2026
    New York, New York

**FARRELL FRITZ, P.C.**

By: /s/Martin G. Bunin
    Martin G. Bunin
    622 Third Avenue, Suite 37200
    New York, New York 10017
    Telephone: (212) 687-1230
    Email: mbunin@farrellfritz.com

    *Counsel for Defendant Eric M. Huebscher, not individually but solely in his capacity as Receiver*

12